Eloise Pepion COBELL, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior, Lawrence Summers, Secretary of the Treasury, and Kevin Gover, Assistant Secretary of the Interior, Defendants.

No. CIV. 96–1285(RCL).

United States District Court, District of Columbia.

Aug. 10, 1999.

Dennis M. Gingold, Washington, D.C., Thaddeus Holt, Point Clear, AL, Elliott H. Levitas, Atlanta, GA, Keith Harper, Lorna K. Babby, Native American Rights Fund, Washington, D.C., for Plaintiffs.

Lois J. Schiffer, Assistant Attorney General, Tom C. Clark, II, Senior Counsel, Phillip A. Brooks, Senior Counsel, Charles Findlay, Assistant Chief, James Eichner, Brian Ferrell, U.S. Department of Justice, Washington, D.C., for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court pursuant to the court's February 22, 1999 Order holding then Secretary of the Interior, Bruce Babbitt, the Secretary of the Treasury, Robert Rubin, and the Assistant Secretary of the Interior, Kevin Gover, in contempt of court. In accordance with that decision, the court awarded plaintiffs "all expenses and reasonable attorneys' fees caused by the defendants' failure to obey the court's orders of November 27, 1996, and May 4, 1998." *See Cobell v. Babbitt,* 37 F.Supp.2d 6, 37 (D.D.C. 1999). On April 6, 1999, plaintiffs submitted a Statement of Fees and Expenses claiming a total of $2,366,684.00 for the seven attorneys and experts involved in the trial. *See* Pls.' Statement of Fees and Expenses at 2. One month later, defendants responded to plaintiffs' claim. While conceding to the sanction award and accepting the rates demanded, defendants challenged the plaintiffs' claimed hours, alleging duplication, inadequate documentation, and inclusion of hours not "caused by" the acts of contempt. *See* Defs.' Resp. to Pls.' Statement of Fees and Expenses at 9–10. Defendants, eliminating "noncompensable" or undocumented time and applying monthly percent reductions to questionable remaining hours, suggested a $476,729.46 total award. *See id.* at 10. Plaintiffs replied on May 19, 1999, again asserting that defendants' contemptuous conduct "caused" them to incur all the included hours and proposing the award of the "uncontested" $476,729.46 before completion of the court's deliberation on the full request. *See* Pls.' Reply to Defs.' Opp'n to Pls.' Statement of Fees and Expenses Related to Defs.' Contemptuous Conduct [Pls.' Reply] at 3. Defendants moved for leave to file a surreply, arguing therein that they offered the $476,729.46 only in full resolution of the fee dispute. *See* United States' Surreply in Resp. to Pls.' Statement of Fees and Expenses [Defs.' Surreply] at 2 n. 1. In the alternative, defendants argued again for exclusion of "unrelated" charges and application of monthly percent reductions. *See id.* at 2–3.

In light of the parties' continuing disagreement over the appropriateness of plaintiffs' fee requests, the court independently reviewed plaintiffs' submitted hours. After "painstaking review of each time entry," *see Jones v. Clinton,* 57 F.Supp.2d 719, 725 n. 8 (E.D.Ark.1999), the court awards expenses and attorneys' fees of $624,643.50.

## I. Background

In 1996, this court certified a class of Native Americans, represented by the five named plaintiffs (FNP), to bring a claim against the federal government for mismanagement of trust funds.[1] *See Cobell,* 37 F.Supp.2d at 11. Plaintiffs seek both a "retrospective" accounting of the government's Individual Indian Money (IIM) trust account system and a "prospective" court order requiring the government to align its management of the account system with statutory and common law requirements of trust management. *See id.* The case was bifurcated to address each of these issues separately. As the case inched toward trial, plaintiffs encountered a plethora of discovery obstacles. Significant among these obstructions was defendants' failure to comply with the court's November 27, 1996 Production Order and May 4, 1998 Scheduling Order regarding production of documents for the FNP and their predecessors in interest.

### A. The Contempt Trial

On February 22, 1999, after determining that defendants had failed, as of the June 30,

---

1. For a more complete discussion of the background to, and merits of, the underlying litigation, see Memorandum Opinion, June 7, 1999.

1998 court-ordered deadline, *see* May 4, 1998 Scheduling Order ¶ 3(b), to comply with paragraph 19 of the court's First Order for the Production of Information ordering the release of "all documents, records, and tangible things which embody, refer to, or relate to IIM accounts of the five named plaintiffs or their predecessors in interest," *see* First Order for the Produc. of Information, ¶ 19, the court held the Secretary of the Treasury, the Secretary of the Interior, and the Assistant Secretary of the Interior in contempt of court. *See Cobell,* 37 F.Supp.2d at 39. In accordance with this contempt finding, and Federal Rule of Civil Procedure 37(b)(2)(E), the court awarded plaintiffs "all expenses and reasonable attorneys' fees caused by defendants' failure to obey the court's orders of November 27, 1996 and May 4, 1998." *See id.* at 37. Defendants readily conceded that they owed such fees. *See id.*

This case determines the amount of the attorneys' fees and expenses from that contempt holding. *See id.* The following discussion does not detail the merits or claims central to the underlying litigation, but tracks instead the progress, and frustration, of discovery, providing a background to the court's analysis of acceptable fee and expense awards.

B. Discovery

At the outset of the underlying litigation, plaintiffs and defendants agreed to jointly pursue a statistical sampling as an alternative to the complete accounting which, it appeared, the government would be unable to provide. *See* Defs.' Resp. to Pls.' Statement of Fees and Expenses (Defs.' Resp.) at 14. Consulting firms retained by each party, Arthur Anderson (AA) for defendants and Price Waterhouse Cooper (PwC) for plaintiffs, suggested sampling a certain number of records which, once fully assembled, could provide a guide for future analysis of other, perhaps less complete, files. By September or October 1997, however, the relationship between the co-samplers had begun to disintegrate. *See* Defs.' Resp. at 14; Defs.' Resp. at Ex. 3 (letter from Dennis Gingold dissolving the cooperative effort). Differences of opinion as to the number of records needed

for a representative sample and the correct analytical method with which to study the selected files culminated in a dispute over PwC's selection, without defendants' representatives present, of 300 records for the study. *See id.* at Ex. 3, Ex. 4 (transcript, June 16, 1998 Status Call, 3:18–21). Plaintiffs, however, decided to move ahead with an independent sample using the selected 300 records. *See id.* at 14.

In January 1998, plaintiffs filed a Motion to Compel the production of documents related to the 300 record sample that they had detailed in their First Formal Request for Production of Documents. This request sought the release, "without any temporal limitations," of all documents, including any documents related to predecessors in interest or account beneficiaries, for the selected 300 IIM accounts. *See* Pls.' First Formal Req. for Produc. of Docs., at 1–2. Although the court ultimately denied plaintiffs' motion in April 1998, plaintiffs expended a great deal of time, energy, and resources on the sampling effort, including traveling to Phoenix and Portland in pursuit of necessary records. *See* Pls.' Reply at 14. By January 1999, as defendants admitted to the court that they "could not or would not" produce the FNP and predecessor in interest documents, a frustrated PwC stopped its sampling efforts, concluding that because necessary source documentation seemed permanently elusive, continuing the sample attempt was merely "wasting substantial time and money." *See* Pls.' Reply, Ex. 9, at 3 (Pollner Aff.).

Discovery conflicts between plaintiffs and defendants were not, however, limited to the sampling efforts. Conflicts also arose surrounding plaintiffs' efforts to retrieve documents for one of the named plaintiffs from the Bureau of Indian Affairs' (BIA's) Winnebago, Nebraska agency. On April 8, 1998, defendants informed plaintiffs that the desired documents were under a TRO issued by the Winnebago Tribe's Tribal Court. *See Cobell,* 37 F.Supp.2d at 33. Thus, according to defendants, plaintiffs could not remove the documents pertaining to named plaintiff LaRose from the BIA offices. *See id.* The TRO in question was dissolved on April 30, 1998. *See id.* Rather than informing plain-

tiffs of the new document availability, however, defendants hid behind another excuse, this time the potential contamination of files and file storage areas with the deadly hantavirus, apparently transmitted through rat infestation. *See id.* While this risk might have prevented discovery between July and December, plaintiffs should have had access to the LaRose records between the TRO's dissolution and discovery of "infection" in July. *See id.* Although the documents were released in December 1998, their production was seriously and unnecessarily delayed, frustrating plaintiffs' efforts to collect FNP documents under paragraph 19 of the November 1996 Production Order, and even warranting a trip to the Winnebago site by plaintiffs' counsel. *See* Harper Aff., Ex. 6 (expense report showing November 25–29, 1998 trip to Winnebago by Native American Rights Fund (NARF) attorney Robert Peregoy).

Discovery fared no better closer to home. When plaintiffs attempted, during the spring of 1998, to depose important members of government agencies in pursuit of information regarding the general status of record maintenance within the IIM system, defendants filed Motions to Quash the depositions, as well a Protective Order against the deposing of high-level individuals. *See Cobell,* 37 F.Supp.2d at 34. While the court denied defendants' Motions to Quash the depositions of key figures like former Special Trustee for American Indians at the Department of the Interior, Paul Homan, defendants' "tactics" caused much unnecessary delay. Although the resulting depositions did not, in most cases, shed light on the particular FNP documents contemplated by the court's violated Production and Scheduling orders, plaintiffs had spent considerable time not just deposing, but arguing their right to depose, the individuals in question.

The preceding account of discovery frustrations is far from complete, but it provides the necessary backdrop for the court's consideration of plaintiffs' fee and expense claims.

## II. Attorneys' Fees

■ Attorneys' fees are generally computed according to the lodestar figure, reasonable rate times reasonable number of hours. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The same figure is used when fees are awarded in conjunction with a Rule 37 contempt finding. *See Weisberg v. Federal Bureau of Investigation,* 749 F.2d 864, 872–73 (D.C.Cir.1984) (determining a fee for a Rule 37 sanction by applying *National Ass'n of Concerned Veterans v. Secretary of Defense,* [*NACV*], 675 F.2d 1319 (D.C.Cir.1982), a case demonstrating and advocating use of lodestar figures). The D.C. Circuit has admonished, however, that "where a fee is sought from the United States, which has infinite ability to pay, the court must scrutinize the claim with particular care." *See Copeland v. Marshall,* 641 F.2d 880, 888 (D.C.Cir.1980). In this case, the government possesses not only an "infinite ability to pay" attorneys' fees awards, but also an equally infinite "guilt" for the creation of many of those charges. *See Cobell,* 37 F.Supp.2d at 36. Granting a fee award, especially in a "guilty government" scenario like this one, could be seen as providing a windfall to plaintiffs or an unprecedented burden on defendants. The court must, therefore, pay the utmost attention to confining properly the award within the appropriate, contempt-based grounds.

### A. Reasonable Hourly Rate

■ On page four of the government's Response to Plaintiffs' Fee Applications, the government expressly states that it does not contest the rates asked by each of the seven involved attorneys. *See* Defs.' Resp. at 4. In accordance with the law of this district, the court will thus award the rates as requested, even though plaintiffs' counsel have not met the general standards for rate documentation.[2] *See Covington v. District of Columbia,* 57 F.3d 1101, 1106 (D.C.Cir.1995) (not addressing hours based on defendant's conces-

---

**2.** The involved attorneys rely only on their own affidavits as evidence of their established hourly rates. While the court generally prefers stronger evidence of a particular rate, including personal affidavits, past billing agreements, and records of previous fees, *see NACV,* 675 F.2d at 1326, it will, based on the government's failure to contest the rates given, accept the rates as presented.

sion to the reasonableness thereof); *Shepherd v. American Broad., Cos.*, 862 F.Supp. 505, 510 (D.D.C.1994) (awarding, without discussion, requested fees for one attorney because "[defendant] does not contest her rate nor the reasonableness of the ... hours she worked"). Rates will be awarded according to plaintiffs' own schedules:

| | |
|---|---|
| Dennis Gingold: | $373.75/hr, pre-6/5/98 |
| | $230.00/hr, post 6/5/98 |
| | |
| Thaddeus Holt: | $345.00/hr, pre 6/5/98 |
| | $230.00/hr, post 6/5/98 |

Native American Rights Fund (NARF):

| | |
|---|---|
| Keith Harper | $170/hr |
| Ronald Peregoy | $170/hr |
| Lorna Babby | $170/hr |
| John Echohawk | $170/hr |
| James Kawahara | $170/hr |

The government attempts to condition its acceptance of Gingold's and Holt's fees to exclude a 15% expense charge incorporated in the provided rates, claiming that the inclusion represents "overhead" costs and inappropriate "out-of pocket" expenses. *See* Def.'s Resp. at 11, 12, 13. The court, however, does not find that an attorney's fee is divisible at will. The rate provided by plaintiffs is the rate plaintiffs claim to charge. Defendants may either accept or contest the provided figure, but they may not "pick and choose" aspects of the fee to criticize on a whim. The court will not, therefore, reduce Gingold's or Holt's presented rates.

### B. Reasonable Hours

The second aspect of the attorneys' fees decision, reasonable hours, brings defendants and plaintiffs into great conflict. Defendants criticize several substantive areas of plaintiffs' selected charges. *See* Def.'s Resp. at 2–3. To offer a more "legitimate" assessment of the hours billed, the government moves through the submitted time sheets in a month-by-month analysis, suggesting, for each month, a percent reduction to exclude "inappropriate" charges and confine the award to contempt related submissions. *See*

*id.* at 21–49. The government relies on a series of cases in which the fee recipient expended time on unrelated issues or unsuccessful claims. *See id.* at 7. While several of these cases featured cuts of up to 75% or 91% of the original hours, this was usually to reflect success of a single issue in a multiple issue case, *see Andrade v. Jamestown Housing Auth.*, 82 F.3d 1179, 1191–92 (1st Cir. 1996) (prevailing on 1 of 5 claims); *Zook v. Brown*, 865 F.2d 887, 895–96 (7th Cir.1989) (failing to prove several claimed issues), or to compensate for inclusion of excessive expenses, *see Orson v. Miramax Film Corp.*, 14 F.Supp.2d 721, 728 n. 7 (E.D.Pa.1998) (reducing award by 75% for overcharging on copying and secretarial work). In the present case, plaintiffs prevailed on the discovery issue. What defendants actually challenge by questioning hours expended towards non-FNP issues are not failed claims, but claims that have not yet been evaluated. Furthermore, the defense uses percent cuts in the context of a monthly analysis rather than adhering to a pattern better established in this circuit of making across the board percent reductions for entire fee awards. *See Shepherd v. American Broad., Cos.*, 862 F.Supp. 505, 510 (D.D.C.1994) (declaring that a 10% reduction would clearly be within the court's power); *In re North*, 12 F.3d 252, 257 (D.C.Cir.1994) (discounting final award by 30% on suspicion of inflated billing hours); *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258–59 (D.C.Cir.1993) (excluding one lawyer's fee for "grossly unreasonable" hour inflation); *Kennecott Corp. v. Environmental Protection Agency*, 804 F.2d 763, 768 (D.C.Cir.1986) (remanding with an order for a 15% reduction for "bad documentation" of hours or a 1/3rd reduction for failure to prove all claims). While the government legitimately protests some included charges, neither its manipulation of percent reductions nor a more standard application can provide a truly fair accounting of plaintiffs' reasonable hours.[3]

---

**3.** The court is aware that this is not the "end of the road" in plaintiffs' pursuit of attorneys' fees. It is concerned that applying a percent reduction to plaintiffs' reported hours, rather than specifically analyzing each hour requested, might ultimately prevent plaintiffs from later claiming the full value of hours not related to the contempt decision. Utilizing a system of itemized reductions, the court will distinguish hours appropriate under the contempt hearing from those which could be claimed if plaintiffs ultimately prevail in the underlying litigation. While this

■ The February 22, 1999 contempt order provided that defendants should pay plaintiffs' "reasonable expenses, including attorneys' fees, *caused by* defendants' failure to obey [the two orders]." *See Cobell,* 37 F.Supp.2d at 39. · This causal connection is not to be taken lightly. A near "but for" · relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1179 (D.C.Cir. 1985) (requiring fees and expenses awarded to be "incurred because of" the sanctioned violation); *Turnbull v. Wilcken,* 893 F.2d 256, 258 (10th Cir.1990) (remanding after finding the causal connection between the Rule 37(b)(2) violation and the fees assessed less than entirely clear). The court, recognizing the special care demanded when the "infinitely funded" government will foot the bill, *see Copeland,* 641 F.2d at 888, and acknowledging the need for clear connections between fee reductions and inappropriate activities, cannot allow broad, percent-based cuts to replace particularized examination. While the Supreme Court has recognized that the court cannot, and should not, have to evaluate each reported hour after the fact in most fee litigations, *see Hensley,* 461 U.S. at 433, 103 S.Ct. 1933, this circuit has reminded that it "may on occasion, be necessary for the District Court to examine the original time logs." *See Copeland,* 641 F.2d at 905. This is one of those occasions. The court will evaluate first-hand both the substance of the disputed entries, and the particular recorded hours for each reported month. The court first examines the merits of the disputed types of included hours.

### 1. Substantive Issues

#### a. Travel Time

■ Both parties agree that attorneys may not bill for travel time, especially for a non-local attorney. *See* Defs.' Resp. at 9; Pls.' Reply at 9. Plaintiffs insist, however, that the "travel" charges they include, particularly Mr. Holt's December 6, 1996, "To/from Washington," relate to work done while in

process is far less "convenient" for the court, the court believes it best serves the interests of both

transit, not to the travel itself. *See* Pls.' Reply at 9; May 15, 1999 Holt Aff., at 2. The court agrees that the inclusion of travel time is inappropriate, especially when plaintiffs do not attempt to establish that a specific trip was "caused by defendants' failure to obey" the previous orders. Thus, the court eliminates all recorded travel hours.

#### b. General Discovery

■ Armed with a "but for" interpretation of the contempt holding, the government removes a large percent of hours billed for "general discovery." The government assumes that these "discovery" hours inevitably refer to "discovery not related to paragraph 19." *See id.* at 9–10. Problematically, the government's assessment of reductions depends in a large part on its reading of plaintiffs' short-hand descriptions of completed work. For instance, in their June 1997 analysis, the government decides that work under the headings "document production," "document problems," or "document issues" is not compensable since it does not specifically reference the FNP documents in question. *See id.* at 33. While defendants readily criticize these entries, they fail to suggest other document production, problems, or issues to which the entries might refer. Without such suggestions, and in view of the vast number of FNP problems and issues which the plaintiffs encountered, the court finds these labels adequate to indicate action on FNP documents. Although more descriptive labels would be preferable, the court will not eliminate time under broad or general labels.

#### c. Math Errors

Defendants assert that mathematical and clerical errors have resulted in an extra $39,-753 for Gingold. *See* Defs.' Surreply at 3; Ex. 1 at 2 (noting mathematical errors of $36,000 for Gingold). Arthur Anderson both assessed these deficiencies and declared itself unable to resolve the flaws due to missing information. *See* Preber Decl., at 4. The court too has noticed discrepancies between Gingold's month-end hourly totals and the

parties.

government's addition of the same listed terms. *See* Pls.' Reply, Ex. 7, at 4–5; Defs.' Surreply at 3, Ex. 1, at 2. When parties' totals conflict or monthly totals appear unusually high, the court has provided its own summation of the billed hours. While plaintiffs are not directly penalized for their addition errors, where errors occur the court has used its own total, rather than the total proposed, from which to make any necessary reductions.

d. Depositions

■ The government seeks to remove all charges related to the Homan, Christie, Virden, Erwin, and Arthur Anderson personnel Preber and Lasater depositions, as well as plaintiffs' unsuccessful attempts to depose Shields, Cohen, and Perlmutter, insisting that these depositions did not provide information on the FNP or predecessor in interest documents. *See* Defs.' Resp. at 19. Plaintiffs claim, on the other hand, that each of these depositions sought information about document production, including production of documents for the FNP or their predecessors in interest. *See* Pls.' Resp. at 10. Having examined each of the successful depositions independently, the court allows the inclusion of time for the Christie and Virden depositions only. Although in a few of the other cases, the witness was *asked* for information regarding the production or status of documents relating to .the FNP, *see* Erwin Dep., at 203:15–204:15, only Christie and Virden provided substantive information regarding the potential locations of, or sources for, those documents. *See* May 13, 1998, Christie Dep., at 216:4–19 (explaining that examining documents for the FNP took as long as for a 450 record sample, *see* May 12, 1998, Christie Dep., at 121:2–140:2, thus connecting his earlier testimony on the time needed to examine documents box by box to the FNP discovery); June 10, 1998, Virden Dep., at 105:19–109:4, 111:9–114:13, 120:12–121:12. Where other deponents described interactions among the various agencies involved in trust management, *see* May 27, 1998, Erwin Dep. at 98:7–104:4, or provided detailed descriptions of the government's new accounting systems, *see id.* at 214:6–219:11, Christie and Virden provided concrete information on where and how documents were kept; information vital to uncovering the requested FNP documents. Had defendants produced the FNP documents as requested, plaintiffs would still have needed general information on the accounting and managerial programs in place at BIA. They would not, however, have needed descriptions of how to locate the FNP documents they would have already possessed.

The court also allows time spent in pursuit of Perlmutter's deposition. As plaintiffs stated in their Opposition to Defendants' Consolidated Motion for Protective Order and to Quash Subpoenas Directed to Willa Perlmutter, Edward Cohen, and Anne Shields at 19, plaintiffs had testimony from Christie indicating that Perlmutter was directly responsible for stopping document production efforts. Had the government produced the FNP documents and avoided contempt of court, plaintiffs would not have needed to question Perlmutter, the person behind the failure to produce. While plaintiffs would include Cohen and Shields by association, the court finds no direct link between either of these individuals and the FNP documents which would warrant awarding time for plaintiffs' pursuit of their depositions. Although plaintiffs have made little effort to distinguish their work on the Perlmutter, Cohen, and Shields deposition motions from the motions surrounding the Homan deposition, the court has considered any work on a "Motion to Quash" or "Motion to Compel" during June 1998, the month in which the relevant motions were entered, as related to Perlmutter's, Cohen's, and Shields's depositions.[4]

e. Price Waterhouse Cooper

■ Plaintiffs request a total of $1,232,276 in fees and expenses for PwC, claiming that these charges directly relate to defendants'

---

4. Since the court accepts time related to only one of the three included depositions, June 1998 entries related to these motions have been reduced by 2/3rds. Time researching the deposition of attorneys or attorney-client and work-product privileges is reduced by ½ as only Cohen and Perlmutter are attorneys, and only time for work seeking Perlmutter's deposition is compensable.

failure to produce the paragraph 19 evidence. *See* April 26, 1999 Pollner Aff. at 1, 4. The majority of these fees come from payments to PwC involving the 300 record sample from which plaintiffs hoped to create an alternative to a complete accounting. *See* Pls.' Reply at 11–12. According to plaintiffs, "but for defendants' misconduct... plaintiffs would never have spent hundreds of thousands of dollars... pursuing futilely a useless statistical equivalent of an accounting." *See id.* The court, however, questions the directness of the connection between this "futile" sampling attempt and defendants' failure to produce FNP documents. Defendants remind that the sampling was originally proposed as a joint effort which disintegrated when plaintiffs refused to redraw the 300 record sample in front of government witnesses. *See* Defs.' Resp. at 14. Defendants further allege that PwC's original plan did not even require the unproduced records for the FNP and their predecessors in interest to generate a successful sample. *See* Defs.' Surreply at 5. Although plaintiffs argue that the failure to produce the FNP documents drove PwC to conclude that production of documents for the selected 300 sample members would not be forthcoming, and thus to abandon the sample effort, *see* Pls.' Reply at 13–14, the court finds this line of causation tenuous at best. While PwC's frustrations have proven entirely rational, the fact that defendants' failure to produce documents unrelated to the search in question *motivated* PwC's independent decision to abandon the sample method does not mean that the abandonment of the survey was *caused by* the defendants' failure to comply with the November 1996 and May 1998 orders. While it is true that the documents for plaintiffs' sample were not produced in a timely fashion, those specific documents are not included in paragraph 19 of the November 27, 1996 Production Order and are specifically excluded from paragraph 3(b) of the May 4, 1998 Scheduling Order. Plaintiffs cannot, therefore, in connection with this contempt proceeding, collect fees or expenses for any of their sampling activities. The court does not, of course, mean to indicate that these fees and expenses are not recover-able if plaintiffs ultimately prevail in this litigation.

Plaintiffs include trips to Phoenix and Portland for record inspection in the costs of producing the failed sample, claiming again that had they known about defendants' intention to default on the court production order sooner, they would have abandoned the sample effort sooner, preventing the creation of these travel costs. *See* Pls.' Reply at 14. As in the underlying PwC assessment, the links in plaintiffs' chain of causation seem rather weak. While plaintiffs might have convincingly argued that the sample was only one purpose of the trips, and that at least a portion of the costs should be recovered, *see* Defs.' Resp. at 17 (quoting September 15, 1997 letter from PwC to Gingold), they have only weakly and without any clear support raised that claim. *See* April 2, 1999 Pollner Aff. at 14 (claiming, without alleging any apparent factual basis, that had PwC known of the FNP document failure, only 312 hours would have been expended). The court will deny all awards related to the Phoenix and Portland trips.

Defendants finally challenge plaintiffs' pursuit of a spring 1997 meeting with representatives of both the BIA and the Bureau of Land Management (BLM) as related to plaintiffs' 300 record sample, rather than the unsubmitted FNP documents. *See* Defs.' Resp. at 17, Ex. 8 (Pollner letter to Perlmutter requesting discussion of general aspects of "systems and processes currently in place" at BIA and BLM). Plaintiffs do not attempt to address this claim. The court will, therefore, remove time billed in preparation for and attendance at the BLM/BIA meeting.

#### f. Evidentiary Issues

Since the February ruling, plaintiffs and defendants have engaged in a constant tug-of-war over plaintiffs' submissions of fee documents. Claiming that the records submitted constituted "summaries" and thus violated the *NACV* standards for "sufficiently detailed information" on claimed hours, *see* Defs.' Resp. at 5 (citing *NACV,* 675 F.2d at 1327), defendants asked plaintiffs for the original time records from which the submitted summaries were prepared. *See id.* at

Ex. 2. Plaintiffs say they faxed the records. *See* Pls.' Reply at Ex. 5; May 17, 1999 Gingold Aff. at 1–2. Defendants claim they did not get the complete records, *see* Defs.' Surreply at 9, but cite extensively to one such record as evidence of the "faults" in the original submissions, *see id.*, at Ex. 2–3. Although at trial Gingold and Holt asserted that the court and the defendants have the only billing statements that exist currently, *see* Transcript, Day 20, 3631:13–15, the court cannot assess from the records provided which and what kind of hours the plaintiffs themselves removed. Without such evidence, plaintiffs fail to demonstrate that their cuts sufficiently respond to the government's challenges. As Holt, for instance, fails entirely to provide descriptions of previously deleted hours, the court can offer no "leeway" for his attempts to respect the government's claims. Additionally, Gingold's method of reporting his post-edit hours presents clarity problems. He does not provide an item-by-item breakdown of his fees before his April 1997 Weekly Sanctions Billing Statement # 2. Thus, for the period before April 6, 1997, Gingold offers no insight into the amount of time appropriate to remove should the court find part of an entry unrelated to the FNP documents. The court must "approximate" a reduction for these hours.

While the court accepts plaintiffs' claims that they have submitted to both the defendants and the court "the only [records] that have been created," *see* Transcript, Day 20, 3631:15, it recognizes the questions that these records do not and cannot resolve. In undertaking its own monthly analysis, the court has, therefore, relied when necessary on a proportional method of delegating time to individual items within a list of charges.

## 2. Itemized Analysis

### a. Method

As *Copeland,* 641 F.2d at 905, reminds, a court must occasionally examine each hour submitted in pursuit of attorneys' fees. Following this principle the court has chosen to complete its own analysis of billed hours, applying a mathematical proportion to determine the specific time for each element within a list of items when so required. The court has analyzed every charge for each of the seven participating attorneys, examining the charges separately, and where possible, eliminating only the recorded portions of an entry directly related to a nonconforming charge. Where vague recording or complex entries prevent the court from tying exact recorded hours to specific charged items, the court has approximated time for those elements in proportion to their percent of the complete charge.[5] The total of these particularized reductions are then subtracted from each month's claimed hours to provide a new monthly total.[6] The court hopes, through the application of these steps, to have as accurately as possible reduced only the charges not directly relating to justified FNP issues in accordance with its substantive assessments. While the court will articulate the reasons for the majority of each month's reductions, it has attached the complete analysis to the back of this opinion. *See* Appendix A.

### b. The Monthly Analysis

### 1. *November 1996*

### a. Gingold

Only Mr. Gingold enters charges for November 1996. The 5.5 hours claimed all involve work on class certification issues, issues not directly tied to the FNP document production. The court denies all of these hours.

---

5. The court notes the similarity of its approach to that utilized by the Eastern District of Arkansas in its July 1999 award of contempt-based attorneys' fees in *Jones v. Clinton.* The *Jones* court explained its methodical reductions of submitted fees, stating simply that "while this process might not be exact, the Court believes it represents a fair and expeditious solution to determining the sum total of reasonable fees and expenses that plaintiff incurred as a result [of the contemptuous act]." *See Jones,* 57 F.Supp.2d at 728

n. 16. This court also believes that in the case at hand, itemized analysis and, when necessary, proportional reductions, provide the most equitable result.

6. In Gingold's entries, when plaintiffs have incorrectly totaled the number of billable hours for the month, the court subtracts the reductions from its own confirmed total.

## 2. December 1996

### a. Gingold

Gingold claims 55.3 hours for December 1996. Most of that time was spent attempting to secure copies of computer files under paragraph 1 of the November 27, 1996 Production Order, selecting documents for PwC's analysis, preparing a case "progress report," and pursuing other non-paragraph 19 documents. The court reduces his hours to 34.51.

### b. Holt

Holt's most disputed December 1996 charge is for 7 hours of travel "to/from Washington." *See* Holt Aff., Ex. 1, at 1. The court rejects the claimed traveling time and an additional quarter of an hour for work on paragraph 2 issues. Holt's time is reduced from 10 hours to 2.75.

### c. NARF

Harper's hours will be reduced from 5.5 to 5 for time spent debating "ethical conflicts," case scheduling, and mineral issues. *See* Harper Aff., Ex. 2, at 14. Kawahara, the only other NARF attorney seeking December 1996 hours, will receive the 4.6 hours claimed.

## 3. January 97

### a. Gingold

Gingold spends most of his January 1997 time pursuing submission of the paragraph 1 computer cartridges. Again, this belongs to a class of discovery necessary whether or not the government produced the FNP documents on time. A few additional hours were spent on PwC's sample plan and the Mineral Management Service (MMS). The court reduces Gingold's hours from 26.3 to 11.64.

### b. NARF

Mr. Harper's time is reduced from 3.35 hours to 2.69 hours to compensate for time spent assessing case status and handling the media.[7] Mr. Peregoy's billing requires similar reductions, from 6.4 hours to 2.1 hours, for his assistance on case status preparation as well as his work on class certification, ethical questions, the PwC plan, and ensuring NARF's place on the government's "service list." *See* Harper Aff., Ex. 3, at 1/22/97. Kawahara's hours decrease from 4 to 2.9 in light of his contribution to the case status efforts.

## 4. February 1997

### a. Gingold

In February 1997, Gingold spent over 7 hours preparing for the BLM/BIA meeting and working with PwC on its 300 record sample. His hours are reduced from 23.5 to 16.23 to compensate for this non-paragraph 19 time.

### b. NARF

Harper spent several of his February hours working on case status information, plaintiffs' request for interim relief, sovereignty issues, and the PwC sample. The court reduces his hours from 4.45 to 1.7. Peregoy's hours decrease from 3.75 to 2.2 for his work towards the February status conference. The court also rejects one hour of Kawahara's claimed 3.5 for his work on case status and government expert witnesses.

## 5. March 1997

### a. Gingold

Gingold receives 16.6 of his 28.3 claimed hours for March 1997 primarily because of work for the BLM/BIA meeting and attention to the PwC sample.

---

7. Throughout its analysis, the court has deducted time spent in preparation for and attendance at status conferences. Although some conference time was surely devoted to the status of FNP document production, the court believes this time would have been necessary even if defendants had provided the ¶ 19 documents in a timely fashion. While it is possible that defen-

dants' failure to produce the FNP documents enlarged plaintiffs' preparatory burdens by increasing the complexity of, and thus the time required by, status issues, plaintiffs have failed to provide any means by which the court could quantify this additional burden. The court has, therefore, deducted time for all status conference and status report entries.

### b. NARF

Harper included a variety of inappropriate charges in his March 1997 claim. Hours representing work on case status, interim relief, PwC correspondence, and "special master research" have been removed to generate a new monthly total of 1.1 hours from his claimed 8.25. Peregoy continued his status conference work, requiring rejection of 0.8 hours of his 4.4 hour claim. Echohawk spent all of his 1.3 hours on noncompensable sample work.

### 6. *April 1997*

#### a. Gingold

Gingold spent significant portions of April 1997 working towards the BIA mtg and organizing the upcoming field trips for sample data collection. His hours are reduced from 23.6 to 4.08.

#### b. NARF

Harper records April 1997 time for continuing work with PwC's sample plan and special master issues, as well as for planning the BIA meeting and the Phoenix field trip. He will receive 4.35 of the claimed 18.05 hours.

Peregoy receives only 0.2 hours of the 1.5 claimed hours because of his work on case status reports, while Kawahara receives 0.6 of 7.1 hours billed because of his efforts towards the PwC sample and the request for interim relief.

### 7. *May 1997*

#### a. Gingold

Gingold's May 1997 hours are consumed by his efforts towards the Phoenix and Salt River trips. He receives 4.24 of the 43.4 claimed hours.

#### b. Holt

Holt seeks 1.3 hours for work during May 1997. A portion of his time, however, relates to both the site visits and the PwC sample. His hours are therefore reduced to 0.9.

### c. NARF

All of the NARF attorneys spent significant amounts of time in May 1997 not only preparing for, but also traveling to Phoenix for the site inspections. Unfortunately, this time, required by the PwC sample, does not directly relate to paragraph 19 production of FNP documents. Harper receives 5.05 of the 43.15 hours claimed; Peregoy can validate only 1.5 of his desired 49.1 hours; and Kawahara obtains 1.3 hours from a 35 hour bill.

### 8. *June 1997*

#### a. Gingold

Gingold continued his work on the Phoenix and Salt River trips as well as devoting a significant portion of his time to the defendants' Motion to Quash the deposition of Paul Homan. *See* Gingold Aff. at June 1997.[8] The court grants Gingold 22.61 of the 55.4 hours sought for this month.

#### b. Holt

In June 1997, Holt's work centered on meetings with PwC about the desired document production, tribal management of records, and case status. He will receive 1.85 of the 3.1 hours billed.

### c. NARF

Harper spent almost half of this month's claimed hours on the PwC sample and status conferences. He receives 6.99 of 12.25 claimed hours. Peregoy's time on the status conference, the Motion to Quash, and tribal accounts reduce his 14.1 claimed hours to 3.45. Half of Echohawk's 0.5 hours related to work on tribal contracts with BIA. He receives 0.25 hours.

### 9. *July 1997*

#### a. Gingold

Gingold's work on the Motion to Quash the Homan deposition, now at the reply stage,

---

8. Entries relating to the Motion to Quash are labeled as "Homan" in the Appendix A hourly review for purposes of identifying the motion with the underlying, non-¶ 19 issues discussed in Homan's deposition.

the PwC sample and field visits, the Erwin deposition, and another status conference, require reduction of his July 1997 hours from 78.3 to 20.24.

**b. NARF**

Again in July, NARF began preparations for a sample-related site visit. Harper spent most of his requested 3.6 hours on field visit and PwC efforts. He receives only 0.75 hours for compensable work. Peregoy's 2 hours are cut in half by an hour's work on the Portland trip. He receives one hour.

**10.** *August 1997*

**a. Gingold**

Gingold's work on the Motion to Quash the Homan deposition continued with numerous August 1997 hours devoted to production of a rebuttal brief. Additional hours on a status conference, depositions of Department of Interior personnel,[9] the Portland visit, the request for interim relief, and the PwC sample require compensation of only 7.03 of his 84.8 claimed hours.

**b. NARF**

Travel to Portland and work on site visits, the PwC sample, case strategy, and a status conference reduce Harper's August 1997 hours from 66.4 to 6.72. While Harper traveled, Peregoy focused primarily on the status conference, invalidating all 4.2 of the hours he claims.

**11.** *September 1997*

**a. Gingold**

Gingold spent some September 1997 hours on the Portland trip, a status conference, and special master issues. He also devoted significant portions of his time to PwC and AA's areas of agreement and disagreement on the joint sampling effort and other sample concerns. Only 9 of his 30.6 claimed hours truly relate to FNP issues.

**b. Holt**

All of Holt's September 1997 hours related to the PwC sample.

**c. NARF**

Harper records September 1997 hours for travel, status conference preparations, work on the sample, case strategy, and financing issues. Accordingly, only 9.44 of the 29.05 hours he claims are compensable under the February 22, 1999 contempt decision. Peregoy also devotes time to the status conference, sample, and Portland trip. He receives no time for this month.

**12.** *October 1997*

**a. Gingold**

Gingold spent numerous hours on the sample, the request for a trial date, and "proof" and logistical issues related to the same. *See* Gingold Aff. at 1/24/97. Only 13.33 of his 63.2 claimed hours relate to the FNP documents.

**b. Holt**

Again, Holt spent all of his time on noncompensable work, this month the sample. Thus, he receives none of the 8.5 hours claimed.

**c. NARF**

Much of Harper's October 1997 time went to a status conference, the PwC and joint PwC/AA samples, and plaintiffs' trial date request. Therefore, the court will award compensation for 17.93 of his 45.45 hours. Peregoy, meanwhile, spent 1.1 of his 1.6 hours on status conference work, leaving only a 0.5 hour viable claim.

**13.** *November 1997*

**a. Gingold**

Gingold's November 1997 claim includes hours for local rule investigation, PwC and joint sample work, and case strategy. He receives 17.15 of the 91.6 hours claimed.

**9.** These depositions discussed records management broadly but did not address the FNP docu- ment issue. See discussion of depositions in part II above.

### b. Holt

While Holt claims only 0.1 hours for this month, that time was spent on the Salt River site visit and is not compensable.

### c. NARF

Harper, like Gingold and Holt, spent much of the month on the PwC and joint sample plans. He also devoted time to his reply to defendants' response to plaintiffs trial date request, NARF funding, and preparing a case update. The court will award 20.85 of his claimed 69.8 hours.

Echohawk spent two November hours investigating case settlement possibilities. Although settlement would be discussed later when the failure to produce FNP documents had become apparent, talks at this stage of the trial did not relate specifically to defendants' contempt and are thus not compensable.

### 14. *December 1997*

### a. Gingold

In December 1997, Gingold continued to work on some of the on-going case issues like the sample, the request for trial date, on DOJ's latest request for documents. Additionally, he worked on the structure of the trial itself, preparing timelines, looking with PwC at options for other forms of data analysis, and preparing a status report. After removing time for these activities, Gingold receives 38.67 of his 82.2 claimed hours.

### b. Holt

Holt joined Gingold in preparing the December status report, as well as looking into possible AA stalling on the joint sample project. Slightly less than half his time, 2.41 of 5.1 hours was spent on these issues. He receives the remaining 2.69 hours for work on FNP claims.

### c. NARF

Harper worked on the status report, as well as continuing his activities towards the

PwC sample, including handling the government's request for a redraw and routine case management. He inappropriately includes a charge for reviewing newspaper coverage of the case. 37.51 of his 63.05 claimed hours are compensable.

Peregoy spent half an hour on the sample during December, lowering his claim to 3.7 hours. Echohawk, on the other hand, spent multiple hours on travel, case status, and the sample, leaving only 4.4 valid hours from the 18.3 hours claimed.

### 15. *January 1998*

### a. Gingold

While Gingold spent most of his non-compensable January 1998 hours working on a status report and plaintiffs' Motion to Compel production of the documents for the 300 selected sample accounts,[10] he also handled scheduling, trial bifurcation, the Lasater deposition, the DOJ document request, and special master issues. After adjustment for these widespread activities, 11.61 of Gingold's 83.2 hours remain compensable.

### b. Holt

Holt worked on the Motion to Compel and prepared for a DOJ conference during January 1998. All of his time went to these non-compensable efforts.

### c. NARF

Harper spent considerable time on the status report and Motion to Compel. Additional entries for consideration of AA's sample, a DOJ meeting, and case updates reduce his time from 39.9 to 21.84 hours. Peregoy expended more than half of his billed hours on the DOJ meeting and Motion to Compel. He receives 2.53 of his 6 claimed hours. Additionally, Lorna Babby joined the NARF team in January 1998. All of her first month's time, 10.1 hours, was spent on the Motion to Compel and agenda setting, both non-compensable entries. Echohawk worked on sampling, the Motion to Compel, and a tribe statement, as well as management issues like

---

**10.** Time on the Motion to Compel is referred to as "Mot Comp" in all attorney records in the Appendix A summary.

setting meeting dates and times. The court will award compensation for only 0.75 of the 7 hours he claims.

### 16. *February 1998*

#### a. Gingold

The Motion to Compel absorbed most of Gingold's February 1998 time. Brief periods of attention to the Lasater deposition, the request for interim relief, case status, and logistics also warrant reduction of his claimed hours from 60.1 to 28.55.

#### b. Holt

Holt worked briefly on the sample and case strategy during this month. He retains 2.07 of the 3.2 hours he asserts.

#### c. NARF

While Harper also worked on the Motion to Compel, significant portions of his billed hours went to work on problems at the Salt River site, the trial date request, trial funding, and case strategy. Only 3.92 of his 37 February hours are compensable. Peregoy focused on the Motion to Compel, only briefly addressing the Protective Order, case status, and sampling concerns. He retains 1.7 of his claimed 9.2 hours. Babby also worked extensively on the Motion to Compel, as well as on the PwC sample and the government's filings to date. Her hours have been reduced, from 14.4 to 0.7. Echohawk's 7 hours pertained to DOJ meetings, sampling, case strategy and finance, and extinct accounts. None of his hours, therefore, are compensable.

### 17. *March 1998*

#### a. Gingold

In March 1998, Gingold began to prepare for the non-FNP related Erwin deposition as well as assembling his "findings and conclusions." *See* Gingold Aff., Secondary Submission, March 1998. Additional time on motions, strategy, and case status reduce his 49 hour claim to a 13.95 compensable total.

#### b. NARF

As well as joining Gingold in preparation for the Erwin deposition. Harper devoted March 1998 time to reviewing the budget for the Office of Special Trustee (OST), furthering case strategy, attending to the PwC sample, and following the Motion to Compel. He receives 36.73 of the 53.55 hours he claims.

Peregoy engaged in continued work on the Motion for a Protective Order, as well as reviewing the OST budget, considering trial bifurcation, and conducting research into the award of attorneys' fees. The court recognizes 2.1 of his 20.4 hours. Babby focused her March hours on case strategy, sampling, and the protective order. Removing time for these activities, 3.75 of the claimed 20.4 hours remain.

### 18. *April 1998*

#### a. Gingold

Gingold's April 1998 hours decrease from 60.9 to 43.50. While he did not concentrate on one particular area of inappropriate activity, his combined efforts towards the PwC sample, case logistics, a status conference, bifurcation, reviewing and responding to the DOJ's supplemental brief, and requesting a trial date strayed from the paragraph 19 activities exclusively covered here.

#### b. Holt

Holt receives all of the three hours claimed in April 1998.

#### c. NARF

Harper dealt with PwC's population estimate attempts, prepared a case timeline, considered BIA/OTFM document production problems, and addressed tribal account concerns during April 1998. Nevertheless, 29.49 of his 33.4 hours claimed related to FNP documents. Peregoy also divided his efforts between sampling, case strategy, pre-trial scheduling, and case management. The 8.35 hours retained from his 15.6 hour claim reflect deductions for these activities as well as failure to fully document recorded time. Babby's time decreases from 8.55 hours to 4.6 hours to reflect her work on case management and scheduling.

### 19. *May 1998*

#### a. Gingold

Many of the reductions in Gingold's May 1998 billings stem from time expended on the Preber, Lasater, and Erwin depositions. Additional hours on case management, IIM clean-up, special account consideration, a status conference, sampling, and paragraph 18 of the November 1996 Production Order combine with this deposition time to reduce his 101.8 hour claim to 61.78 hours.

#### b. NARF

While Harper spent time on contract, case strategy, and Salt River issues, he, too, spent numerous hours preparing for the depositions of Erwin and the AA personnel. Review of his 79.15 hour claim leaves only 26.5 compensable hours. Although Peregoy also spent time on the Lasater and Erwin depositions, his work on the status conference, and in trust and fiduciary responsibility research, act primarily to reduce his claim from 26.6 to 19.15 hours.

Babby spent time on the Protective order, the Lasater and Erwin depositions, the status conference, Motion to Compel, and tribal trust fund accounts. She also recorded time for reading about the case in Indian Country magazine. As the court does not find these charges sufficiently related to the paragraph 19, FNP document production in dispute, it reduces Babby's award from 61.3 to 40.51 hours.

### 20. *June 1998*

#### a. Gingold

During June 1998, Gingold worked extensively on his response to defendants' Motion to Quash the ultimately unsuccessful Shields and Cohen depositions.[11] *See* Gingold Aff. at 3. Additional time on modeling and statistics, case status, and the Treasury's check system reduce his compensable hours from 17.3 to 12.9 for the period before his June 5 rate change and from 109.5 to 59.5 for his post-June 5 time under the new rate.

#### b. NARF

Harper also worked briefly on the Motion to Quash and the responsive Motion to Compel for the Shields and Cohen depositions. Much of his time, however, went to research on depositions of opposing counsel (Cohen) and preparing a case update. His 89.4 hours are reduced to 54.93. Peregoy's June 1998 charges mirror those of Harper, including time researching for Cohen's deposition, the Motion to Compel and Protective Orders for Cohen and Shields, and case status. He also lists, however, time on the IIM manual, tribal accounts, contract considerations, and the NEB tribal IIMs. He receives 77.84 of his 88.1 claimed hours. Babby's 77.3 hours are cut to 46.54 in light of her work on the Motion to Compel and Protective Orders for the Cohen and Shields depositions, sampling, and the Homan deposition.

### 21. *July 1998*

#### a. Gingold

Gingold works on strategy, case status, and case analysis, as well as continuing his efforts on the Protective Order. He also begins a Motion to Enlarge time and reviews the AA declaration. All of these "additional" activities reduce his 95 hour claim to a compensable 15.2 hours.

#### b. Holt

One of Holt's 5.6 hours goes to work on the Motion to Extend Time and a reply to defendants' Motion to Quash the depositions. He receives 4.6 hours for July 1998.

---

11. As noted in the previous deposition discussions, while defendants moved to quash the depositions of Shields, Cohen, and Perlmutter, the court will only remove time for work towards the Shields and Cohen depositions because the court agrees that the Perlmutter deposition would not have been necessary had defendants produced the FNP documents requested. Thus, when entries for Motions to Compel or Motions to Quash these depositions appear, the court has reduced the time by 2/3rds to represent its disallowance of two of the three involved depositions. Furthermore, when plaintiffs record time for researching attorney-client privilege or attorney depositions, the court has reduced that time by half, deducting hours devoted to the Cohen deposition while protecting plaintiffs efforts towards securing Perlmutter's testimony.

c. NARF

Harper's claimed 6.55 hours reduce to 1.25 for his work on the Motion to Dismiss and the Protective Order. Peregoy, meanwhile, drops from 6.4 to 5.95 hours for work on "Filegate" and sampling. Babby logs numerous hours for work on the Protective Order, as well as a few hours on a status report and the Motion to Enlarge Time. Her 43 hours claimed reduce to 9.35 compensable hours.

22. *August 1998*

a. Gingold

Gingold worked extensively in August 1998 on the Department of Justice's supplemental filing on plaintiffs' second production request. Other than a few brief entries for sampling and case status, the DOJ supplemental filing work reduces Gingold's 101.6 hour claim to 12.3 compensable hours.

b. Holt

Holt's August 1998 records show one entry for work on the sample. His hours are reduced from 4.0 to 3.2 in accordance with this entry.

c. NARF

Harper's hours drop from 12.9 to 9.88 because of time spent on a status conference, the PwC sample, and "money management." Peregoy's work on the status conference reduces his claim from 30 to 29 hours. Babby receives all of the 2.2 hours billed for this month.

23. *September 1998*

a. Gingold

Gingold works on the Request For Admission (RFA) of FNP documentation during the month of September 1998. While this activity may appear superficially to relate to the failure to produce the FNP documents, as the government highlights in its response, *see* Defs.' Resp. at 46, it would be required whether or not the documents had been delayed. Gingold's hours are reduced from 50.8 to 48.2 compensable hours.

b. Holt

Holt worked on a motion to amend production orders not related to the FNP document production in question. He will receive 5.5 of the 8.1 hours he claims.

c. NARF

Harper spent a few September 1998 hours on alternatives to sampling, a status conference, and an attorney's meeting. These non-compensable hours reduce his claim from 21.3 to 12.5 hours. Peregoy's pre-trial staffing efforts reduce his hours from 14.4 to 13.9. Babby records time spent on scheduling. These non-compensable hours reduce her time from 4.4 to 4.3 hours.

24. *October 1998*

a. Gingold

Gingold accumulates 36.2 hours of RFA time in October 1998. These unrelated hours reduce his award from 89 to 52.8 hours.

b. NARF

The court will reduce Harper's claimed hours from 36.1 to 20.46, reflecting his efforts on the PwC sample, witness interviews, scheduling and case assignments, and special trustee issues, as well as his travel to Oklahoma. Peregoy's work on SRS tribal issues and case status reduce his total compensable hours from 1.2 to 0.2, and Babby's 1.7 hours on the Motion to Compel reduce her total from 16.6 to 14.9 hours.

25. *November 1998*

a. Gingold

Only 0.9 hours for work on the RFA appear inappropriate within Gingold's November 1998 claim. His total decreases from 145 to 144.1 hours.

b. Holt

Holt will receive all of his claimed 18.5 hours.

c. NARF

Harper works on case assignments and staffing, attends a status conference, and

considers sampling efforts and class status during November 1998. He may receive compensation for 65.5 of the 72.35 hours he claims. Peregoy gives his time to case strategy, PwC sampling, settlement considerations, and a status conference, reducing his compensable hours from 66.5 to 56.24. Babby's work towards alternative sampling approaches, settlement talks, and staffing, deducts 3.65 hours to get a new 40.45 total from the 44.1 hours she claims. Echohawk also handles settlement considerations, PwC sampling, and case status. His 6.2 hour claim drops to a 0.67 hour award.

26. *December 1998*

a. Gingold

All of Gingold's claimed 108.9 hours for December 1998 are compensable.

b. Holt

Holt also receives full compensation for the 6.8 hours he claims.

c. NARF

Harper's work on class status, the status conference, and a case update reduce his total from 72.35 to 65.5 hours. Peregoy works on class issues and case status, but also bills for a Motion to Enlarge· Time, reducing his 84.3 hour claim to 76.75 hours. Babby considers class scope, reviews newspaper articles, and organizes the case file. Removing time for these activities, she receives 73.9 of the 76.7 hours she claims. All of Echohawk's claimed 0.7 hours are rejected as work on the non-compensable Protective Order.

27. *January 1999*

a. Gingold

Gingold receives all of the 207.5 hours claimed.

b. Holt

Six hours of travel reduce Holt's award from 15.8 hours claimed to 9.8 compensable hours.

c. NARF

Harper's collection of IIM stories from Indian Country, necessary for trial whether or not the FNP documents appeared on time, will reduce his 83.25 hour claim to 81.25 hours. Peregoy's consideration of the Protective Order and OST budget reduce his 157 hour claim to 151.4 hours. Babby's work on the Motion to Enlarge Time and the Protective Order similarly reduce her time from 95.4 to 95.07 hours.

28. *February 1999*

a. Gingold

Case management time reduces Gingold's February 1999, 64.1 hour claim to 63.7 hours.

b. Holt

Holt receives all 19 hours claimed.

29. *March 1999*

a. Gingold

All 89.4 hours Gingold claims in March, 1999 relate appropriately to paragraph 19.

b. Holt

Holt also receives a complete award of 4.4 hours.

C. The Lodestar Figure

Applying plaintiffs' claimed rates to the court-determined hours, attorneys' fees will be awarded as follows:

| Attorney | Rate ($/hr) | Hours [12] | Award |
|---|---|---|---|
| Dennis Gingold: | | | |
| pre–6/5/98 | $373.75 | 387.61 | $144,869.24 |
| post 6/5/98 | $230.00 | 801.60 | $184,368.00 |
| **Total award:** | | | **$329,237.24** |

12. While hourly totals appear here to 2 decimal places, computations were made using the decimal expanded to the fullest extent obtained in the Appendix A charted analysis.

| Thaddeus Holt: | | | |
|---|---|---|---|
| pre 6/5/98 | $345.00 | 10.51 | $ 3,625.95 |
| post 6/5/98 | $230.00 | 68.20 | $ 15,686.00 |
| **Total award:** | | | **$ 19,311.95** |

| NARF Attorneys: | | | |
|---|---|---|---|
| Keith Harper | $170.00 | 528.45 | $ 89,836.50 |
| Robert Peregoy | $170.00 | 463.26 | $ 78,754.20 |
| Lorna Babby | $170.00 | 336.27 | $ 57,165.90 |
| James Kawahara | $170.00 | 14.06 | $ 2,390.20 |
| John Echohawk | $170.00 | 6.07 | $ 1,031.90 |
| **Total award:** | | | **$229,178.70** |

## III. Expenses

### A. Gingold and Holt

As discussed in the "reasonable rate" section, both Gingold and Holt included expenses in their rates by adding a standard 15% supplemental fee. The court does not, therefore, offer independent consideration of these attorneys' expenses.

### B. NARF Attorneys

NARF submits as Harper Exhibit 6, a list of expenses primarily related to transcripts

| Expense Description | Award |
|---|---|
| Copying, deposition, and transcript charges | $22,171.53 |
| Travel to Winnebago, 11/25–29/98 | $ 796.58 |
| **Total NARF expense award** | **$22,968.11** |

### C. PwC

Plaintiffs claim $1,232, 276.00 in expenses for PwC. Defendants do not dispute 128.75 hours of work "related to the failure to produce FNP documents," *see* Def.'s Resp. at 52, but challenge the remaining time as focused on the 300 sample accounts. Plaintiffs' arguments in support of this fee claim are tenuous at best. The court accepts, therefore, the government's proposal for compensation of the 128.75 hours at the $186/hr rate computed by Arthur Anderson. *See* Def.'s Resp. at 55. While plaintiffs contest the rate AA provides, *see* Pls.' Reply at 16; May 17, 1999 Pollner Aff. at 2, they have failed to offer a new or better rate, if anything, actually *lowering* the rate in their arguments against the $186 figure. *See* Pls.' Reply at 16 (arguing that $186 cannot be computed from the $150/hr and $180/hr with $20 deferred payment asked during the course of the trial). Since plaintiffs do not offer a clear standard, and the defendants' offer is within

and photocopying. *See* Harper Aff., Ex. 6. The court will award the $22,171.53 as requested for these expenses. The court denies, however, most of the $8,487.74 requested for travel expenses. Plaintiffs' trips to Phoenix, Portland, and New York relate more closely to plaintiffs' sampling attempt than to the FNP documents currently at issue. As the Winnebago trip, however, related directly to plaintiffs' pursuit of documents for named plaintiff LaRose, the court will award NARF the $796.58 for Robert Peregoy's November, 1998 travel. Total expense awards to NARF are as follows:

the range plaintiffs discuss, PwC should receive $186/hr for the 128.75 uncontested hours for a total of $23,947.50.

## IV. Conclusion

The court's February 22, 1999 Memorandum Opinion related only to the issue of contempt. It was neither an examination of the merits of the case, nor an all-reaching attempt to compensate for the government's mishandling of or failure to produce evidence during the complete case. The court's decision ordered payment of "reasonable" expenses and attorneys' fees "caused by" defendants' failure to produce the paragraph 19 FNP documents. The court awards the following fees and expenses, aware of the limited scope of this particular ruling. While many of plaintiffs' rejected hours may ultimately be compensable should plaintiffs prevail in the underlying case, those hours are not directly related to paragraph 19 produc-

tion and thus cannot be included as part of the contempt award. The court awards fees and expenses as follows:

| Attorney | Fees | Expenses | Total Award |
|---|---|---|---|
| Dennis Gingold: | $329,237.24 | (included) | $329,237.24 |
| Thaddeus Holt: | $ 19,311.95 | (included) | $ 19,311.95 |
| NARF: [13] | $229,178.70 | $ 22,968.11 | $252,146.81 |
| PwC: | | $ 23,947.50 | $ 23,947.50 |
| **TOTAL AWARD:** | | | **$624,643.50** |

As with the contempt citation issued against two cabinet-level Secretaries and an Assistant Secretary, the court takes no pleasure in awarding these attorneys' fees and expenses. Nonetheless, this ruling is the only fair result, given the manner in which defendants and their prior counsel (who have been voluntarily removed from the administration of this case) conducted themselves in the discovery process. Defendants proposed a clear and unambiguous order for this court's signature in 1996, and the court signed that order. Almost immediately thereafter, defendants disobeyed that order and successfully covered up their disobedience through semantics and strained, unilateral, self-serving interpretations of their own duties. These contumacious misdeeds, carried out by defendants and their counsel, caused several significant consequences. One major consequence was the time wasted by plaintiffs in trying to obtain that to which they were already entitled—basic discovery materials crucial to the litigation of this case. The court's award today compensates plaintiffs' counsel for that wasted time. It must be noted, however, that defendants' contempt has exacted other costs for which they will bear no monetary penalty. The government wasted a substantial amount of this court's time, including needless hearings on document production and a lengthy satellite contempt trial. Further, the government bolstered mistrust between plaintiffs and their trustee.

The court is aware of the unfortunate consequences of today's ruling on American taxpayers. Ultimately these taxpayers will be forced to pay for the misconduct of their government's officials and their government's attorneys. This is a troublesome concept for the court. In this judge's view, the American taxpayers should not continue to be forced to bear the burden of these types of misdeeds. Instead, as is the case in the private sector, these attorneys and officials themselves should bear individual responsibility for their actions. The court recognizes that this would lead to government attorneys and officials seeking insurance policies to cover these types of liabilities. But the court believes that this would be the proper and prudent course. Government attorneys should be allowed to defray liability for their own individual misdeeds through personal insurance, but they should not be able to act in direct defiance of court orders and be indemnified by the American public.

The current posture of this particular case, however, precludes the court from imposing individual liability upon the attorneys and officials responsible for the contempt citation and related award of attorneys' fees and costs. *See Cobell,* 37 F.Supp.2d at 8 n. 1. As noted in the February 22, 1999 Memorandum Opinion, the attorneys removed themselves and the individual officials that they represented from the show cause order, leaving only their client, the government, in the path of liability. *See id.* The court stated that it would not look into the propriety of that action. *See id.* Although the government must be held accountable for the actions of its officials and attorneys, the court has a growing sensitivity toward these burdens being passed along to the people whom the government serves. In the future, this court may be forced to ensure that government

---

**13.** While the court treats NARF as a single entity in conjunction with NARF's salary system, this award incorporates the following awards per attorney:

| | |
|---|---|
| Keith Harper | $89,836.50 |
| Robert Peregoy | $78,754.20 |
| Lorna Babby | $57,165.90 |
| James Kawahara | $ 2,390.20 |
| John Echohawk | $51,031.90 |

attorneys and officials are at least within the potential group of persons who may be held liable as a result of their own misdeeds. A separate ORDER shall issue on this date.

## APPENDIX A

### *APPENDIX A: KEY*

The following tables detail the court's numerical analysis of plaintiffs' attorneys' fees requests. Tables are organized by attorney. Each table is divided into nine columns and a number of rows corresponding to the dates of challenged entries. An explanation of column titles follows:

1. Attorney–Column one provides the name of the attorney to whom the chart applies
2. Month–Column two lists the month and year of the entry discussed.
3. Date of Disputed Entry–Column three gives the month and day of the disputed charge. If an attorney's entry for a particular day has not been contested by defendants or does not fit one of the reduction categories which the court has identified, that entry does not appear in the chart.
4. Challenged Hours–Column four lists the *potentially challenged* hours included in this date's entry. In many cases this will not equal the total number of recorded hours for this date.
5. Proportional Reduction–Column five specifies the factor by which the potentially disputed hours have been multiplied to obtain a new reduction total. If plaintiffs have specifically allotted an amount of time to the act contested, the entry is multiplied by a factor of 1; a "1" appears in the "reduction" column. If, on the other hand, plaintiffs have not provided a precise record of the time required for the challenged item, the court has multiplied the total for that entry as listed in the "hours" column by a factor related to the contested item's proportion of the complete entry. For example, if the challenged item is one of three items composing a single entry, a ".33" appears in the reduction column to indicate that the court will only remove 1/3rd of the total entry time for this date.
6. Reduced Hours–Column six presents the new reduced hourly total produced by mul-

tiplying the challenged hours in column four by the correct reduction in column five.
7. Monthly Hours Claimed–Column seven receives an entry in each monthly summation. It represents the total number of hours claimed by the attorney for the month.
8. Monthly Hours Awarded–Column eight also receives entries only for month end summaries. It represents the difference between the total claimed hours in column seven and the total of the adjusted hours in column six for the month. Column eight becomes the new hourly total for the month.
9. Notes–Column nine provides a brief explanation for the ordered reductions.

At the end of each month, a summary row appears in bold lettering, representing the charges and adjustments made during the previous month. If defendants disputed plaintiffs' claimed total number of hours for that month, the "claim" listed represents the court's own calculation of these charges. At the end of each chart, a "TOTAL" row appears in bold lettering. This row totals the monthly summaries for the entire billing period, providing a new total number of accepted hours for the attorney. In Gingold and Holt's charts, two "TOTAL" rows appear, summing hours separately for the periods before and after the June 5 rate change.

While most potentially confusing abbreviations have been noted in the preceding opinion, the following abbreviations appear frequently in the "notes" section of the charts.

1. Other ¶ or ¶ X–This entry relates to a section of the November 27, 1996 Production Order other than the ¶ 19 FNP documents to which the contempt award pertained.
2. PwC–This entry relates to work with Price Waterhouse Cooper on details of or arrangements for the 300 record sample.
3. Mot Comp–Motion to Compel
4. Prot Order–Protective Order
5. BIA/BLM–This entry refers to work towards, or attendance at, plaintiffs' Spring,

1997 meeting with representatives from BIA and BLM.

6. Prog Rep–Progress report
7. Stat conf/rep–Status conference or report
8. field–This entry refers to work during or towards plaintiffs' trips to Phoenix and Portland in pursuit of documents for the 300 record sample.
9. Mot En. Time/Mot E T–Motion to Enlarge Time
10. RFA–Request for Admission. This entry reflects work on RFA of documents required for trial whether or not defendants complied with the November, 1996 and May, 1998 orders

Other abbreviations appearing throughout the "notes" section of the chart attempt to summarize as clearly as possible the details of the disputed activities. If an acronym is unfamiliar, reference to the immediately preceding entry often provides greater explanation (for instance, Mot APO following Mot to Amend Prod Order). If such consultation does not resolve confusion, reference to the preceding memorandum opinion should provide insight as to the rationale behind any stated reductions.

## GINGOLD
Gingold

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Gingold | Nov. 96 | 11–29 | 5.5 | 1 | 5.5 | | | Class |
| **Total** | **Nov. 96** | | 5.5 | | 5.5 | 5.5 | 0 | |
| Gingold | Dec. 96 | 12–2 | 6 | 0.33 | 1.98 | | | prog rep |
| Gingold | Dec. 96 | 12–3 | 8 | .25 | 2 | | | prog rep |
| Gingold | Dec. 96 | 12–5 | 7 | 1 | 7 | | | other ¶ |
| Gingold | Dec. 96 | 12–6 | 5 | .33 | 1.65 | | | other ¶ |
| Gingold | Dec. 96 | 12–12 | 4.5 | .33 | 1.485 | | | comp file, ¶ 1 |
| Gingold | Dec. 96 | 12–13 | 2 | 1 | 2 | | | comp file, ¶ 1 |
| Gingold | Dec. 96 | 12–14 | 1 | 1 | 1 | | | PwC |
| Gingold | Dec. 96 | 12–16 | 3.2 | .33 | 1.056 | | | comp, spec master |
| Gingold | Dec. 96 | 12–20 | .5 | 1 | 0.5 | | | PwC |
| Gingold | Dec. 96 | 12–24 | .2 | .33 | 0.066 | | | ¶ 1, PwC |
| Gingold | Dec. 96 | 12–26 | 1.2 | 1 | 1.2 | | | PwC |
| Gingold | Dec. 96 | 12–27 | 1.7 | .5 | 0.85 | | | other ¶, PwC |
| **Total** | **Dec. 96** | | 40.3 | | 20.787 | 55.3 | 34.513 | |
| Gingold | Jan. 97 | 1–2 | .5 | 1 | 0.5 | | | PwC |
| Gingold | Jan. 97 | 1–4 | 3 | .33 | 0.99 | | | PwC |
| Gingold | Jan. 97 | 1–6 | 1 | 1 | 1 | | | PwC |
| Gingold | Jan. 97 | 1–8 | .3 | 1 | 0.3 | | | comp |
| Gingold | Jan. 97 | 1–9 | 1.2 | .5 | 0.6 | | | comp |
| Gingold | Jan. 97 | 1–10 | 3.2 | .5 | 1.6 | | | comp |
| Gingold | Jan. 97 | 1–11 | .5 | 1 | 0.5 | | | comp |
| Gingold | Jan. 97 | 1–13 | 4 | .2 | 0.8 | | | comp |
| Gingold | Jan. 97 | 1–14 | .3 | .5 | 0.15 | | | accounts |
| Gingold | Jan. 97 | 1–16 | 2.3 | .25 | 0.575 | | | comp |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Jan. 97 | 1–17 | 2 | .67 | 1.34 | | | comp, MMS |
| Gingold | Jan. 97 | 1–20 | 1 | .5 | 0.5 | | | PwC |
| Gingold | Jan. 97 | 1–21 | .2 | 1 | 0.2 | | | other ¶¶ |
| Gingold | Jan. 97 | 1–23 | .3 | 1 | 0.3 | | | PwC |
| Gingold | Jan. 97 | 1–28 | 3 | 1 | 3 | | | MMS, stat sample |
| Gingold | Jan. 97 | 1–30 | 1.2 | .67 | 0.804 | | | PwC, MMS |
| Gingold | Jan. 97 | 1–31 | 1.5 | 1 | 1.5 | | | |
| Total | Jan. 97 | | 25.5 | | 14.659 | 26.3 | 11.641 | |
| Gingold | Feb. 97 | 2–6 | .6 | 1 | 0.6 | | | PwC |
| Gingold | Feb. 97 | 2–7 | 1.5 | .5 | 0.75 | | | Samp, BLM/BIA |
| Gingold | Feb. 97 | 2–8 | 1.1 | .33 | 0.363 | | | statconf, PwC |
| Gingold | Feb. 97 | 2–19 | 1.5 | .5 | 0.75 | | | ”in part re: FNP” |
| Gingold | Feb. 97 | 2–20 | 1 | 1 | 1 | | | PwC |
| Gingold | Feb. 97 | 2–21 | 5 | .25 | 1.25 | | | BLM/BIA |
| Gingold | Feb. 97 | 2–24 | 1 | .67 | 0.67 | | | BLM/BIA |
| Gingold | Feb. 97 | 2–25 | 1.1 | .5 | 0.55 | | | BLM/BIA |
| Gingold | Feb. 97 | 2–28 | 2 | .67 | 1.34 | | | PwC, comp |
| Total | Feb. 97 | | 14.8 | | 7.273 | 23.5 | 16.227 | |
| Gingold | Mar. 97 | 3–4 | 1 | .3 | 0.3 | | | BLM/BIA |
| Gingold | Mar. 97 | 3–5 | 1 | 1 | 1 | | | BLM/BIA PwC |
| Gingold | Mar. 97 | 3–6 | 1.3 | .5 | 0.65 | | | BLM/BIA |
| Gingold | Mar. 97 | 3–7 | .8 | .5 | 0.4 | | | BLM/BIA |
| Gingold | Mar. 97 | 3–10 | 2 | .25 | 0.5 | | | BLM/BIA "part FNP” |
| Gingold | Mar. 97 | 3–11 | 1.5 | .33 | 0.495 | | | BLM/BIA |
| Gingold | Mar. 97 | 3–20 | 1.2 | 1 | 1.2 | | | other ¶ |
| Gingold | Mar. 97 | 3–21 | 2.5 | .25 | 0.625 | | | MMS, PwC |
| Gingold | Mar. 97 | 3–22 | 2.5 | 1 | 2.5 | | | PwC |
| Gingold | Mar. 97 | 3–24 | 4.5 | .33 | 1.485 | | | PwC, BIA mtg |
| Gingold | Mar. 97 | 3–26 | 1 | .5 | 0.5 | | | PwC |
| Gingold | Mar. 97 | 3–27 | 1.6 | 1 | 1.6 | | | BIA/PwC |
| Gingold | Mar. 97 | 3–31 | .9 | .5 | 0.45 | | | BIA mtg |
| Total | Mar. 97 | | 21.8 | | 11.705 | 28.3 | 16.595 | |
| Gingold | Apr. 97 | 4–1 | 1.7 | 1 | 1.7 | | | BIA, interim rel. |
| Gingold | Apr. 97 | 4–2 | .9 | 1 | 0.9 | | | BIA mtg |
| Gingold | Apr. 97 | 4–3 | 1.5 | .25 | 0.375 | | | BIA |
| Gingold | Apr. 97 | 4–8 | .3 | 1 | 0.3 | | | BIA, PwC |
| Gingold | Apr. 97 | 4–9 | .7 | 1 | 0.7 | | | BIA, PwC |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Apr. 97 | 4–10 | 1.5 | 1 | 1.5 | | | BIA, field visits |
| Gingold | Apr. 97 | 4–11 | 3 | 1 | 3 | | | BIA, field |
| Gingold | Apr. 97 | 4–14 | 4.4 | 1 | 4.4 | | | BIA |
| Gingold | Apr. 97 | 4–15 | 3.3 | 1 | 3.3 | | | BIA, field |
| Gingold | Apr. 97 | 4–23 | .3 | 1 | 0.3 | | | BIA, PwC |
| Gingold | Apr. 97 | 4–24 | .2 | 1 | 0.2 | | | Field |
| Gingold | Apr. 97 | 4–25 | 1.55 | 1 | 1.55 | | | PwC, Phoenix |
| Gingold | Apr. 97 | 4–29 | .9 | 1 | 0.9 | | | Field, Conf call, PwC |
| Gingold | Apr. 97 | 4–30 | .4 | 1 | 0.4 | | | Phnx |
| **Total** | **Apr. 97** | | **20.65** | | **19.525** | **23.6** | **4.075** | |
| Gingold | May 97 | 5–1 | 4.2 | 1 | 4.2 | | | Field, PwC |
| Gingold | May 97 | 5–2 | 2.4 | 1 | 2.4 | | | Field |
| Gingold | May 97 | 5–3 | .3 | 1 | 0.3 | | | Field |
| Gingold | May 97 | 5–5 | .2 | 1 | 0.2 | | | Phnx |
| Gingold | May 97 | 5–6 | .9 | 1 | 0.9 | | | Phnx, PwC |
| Gingold | May 97 | 5–7 | 2.4 | 1 | 2.4 | | | Phnx, Int rel. |
| Gingold | May 97 | 5–8 | .1 | 1 | 0.1 | | | Phnx |
| Gingold | May 97 | 5–9 | 1.1 | 1 | 1.1 | | | Phnx, Int rel. |
| Gingold | May 97 | 5–10 | 2.1 | 1 | 2.1 | | | Phnx, Int rel. |
| Gingold | May 97 | 5–12 | .9 | 1 | 0.9 | | | Phnx |
| Gingold | May 97 | 5–13 | 2.11 | 1 | 2.11 | | | Phnx |
| Gingold | May 97 | 5–14 | 2.1 | 1 | 2.1 | | | Phnx, PwC, stat |
| Gingold | May 97 | 5–15 | 1.1 | 1 | 1.1 | | | Field, stat conf |
| Gingold | May 97 | 5–16 | 2.1 | 1 | 2.1 | | | Field, stat conf |
| Gingold | May 97 | 5–20 | .5 | 1 | 0.5 | | | Field |
| Gingold | May 97 | 5–21 | 2.9 | 1 | 2.9 | | | Field probs |
| Gingold | May 97 | 5–22 | 1.8 | 1 | 1.8 | | | Field prob, int rel |
| Gingold | May 97 | 5–23 | 1.7 | 1 | 1.7 | | | Field |
| Gingold | May 97 | 5–27 | 4.3 | 1 | 4.3 | | | Field |
| Gingold | May 97 | 5–28 | .7 | 1 | 0.7 | | | Field probs |
| Gingold | May 97 | 5–29 | 3.4 | 1 | 3.4 | | | Field, stat sample |
| Gingold | May 97 | 5–29 | .3 | .5 | 0.15 | | | PwC |
| Gingold | May 97 | 5–29 | .6 | .5 | 0.3 | | | Treas. checks |
| Gingold | May 97 | 5–30 | 1.4 | 1 | 1.4 | | | Field, PwC Homan |
| **Total** | **May 97** | | **39.61** | | **39.16** | **43.4** | **4.24** | |
| Gingold | June 97 | 6–2 | 1.2 | 1 | 1.2 | | | Phnx |
| Gingold | June 97 | 6–3 | 1.7 | 1 | 1.7 | | | Homan |
| Gingold | June 97 | 6–4 | .56 | 1 | 0.56 | | | Homan, Salt River |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | June 97 | 6–5 | .2 | 1 | 0.2 | | | Homan |
| Gingold | June 97 | 6–6 | .98 | 1 | 0.98 | | | Homan |
| Gingold | June 97 | 6–9 | 3 | 1 | 3 | | | Homan |
| Gingold | June 97 | 6–10 | .4 | 1 | 0.4 | | | Homan |
| Gingold | June 97 | 6–11 | 3.3 | 1 | 3.3 | | | Homan, Kessler |
| Gingold | June 97 | 6–12 | 2.4 | 1 | 2.4 | | | Homan, Salt Riv. |
| Gingold | June 97 | 6–13 | 1.7 | 1 | 1.7 | | | Salt Riv. |
| Gingold | June 97 | 6–16 | 2 | 1 | 2 | | | Homan |
| Gingold | June 97 | 6–17 | 1.8 | 1 | 1.8 | | | Homan |
| Gingold | June 97 | 6–18 | 2 | 1 | 2 | | | Homan |
| Gingold | June 97 | 6–19 | 1.6 | 1 | 1.6 | | | Homan |
| Gingold | June 97 | 6–20 | 5.2 | 1 | 5.2 | | | Homan, PwC |
| Gingold | June 97 | 6–20 | .3 | .5 | 0.15 | | | PwC |
| Gingold | June 97 | 6–21 | 1.2 | 1 | 1.2 | | | sample |
| Gingold | June 97 | 6–24 | 3.4 | 1 | 3.4 | | | PwC |
| Total | June 97 | | 32.94 | | 32.79 | 55.4 | 22.61 | |
| Gingold | July 97 | 7–2 | 1.5 | 1 | 1.5 | | | Homan |
| Gingold | July 97 | 7–3 | 3 | 1 | 3 | | | Homan |
| Gingold | July 97 | 7–5 | 4.5 | 1 | 4.5 | | | Homan |
| Gingold | July 97 | 7–7 | 5.3 | 1 | 5.3 | | | Homan, PwC |
| Gingold | July 97 | 7–9 | .6 | 1 | 0.6 | | | PwC field |
| Gingold | July 97 | 7–10 | 4.4 | 1 | 4.4 | | | PwC sample |
| Gingold | July 97 | 7–11 | 3.2 | 1 | 3.2 | | | Homan |
| Gingold | July 97 | 7–12 | .8 | 1 | 0.8 | | | Homan |
| Gingold | July 97 | 7–17 | 6.6 | 1 | 6.6 | | | Homan |
| Gingold | July 97 | 7–18 | 1 | 1 | 1 | | | Homan, reply |
| Gingold | July 97 | 7–18 | 5.7 | .5 | 2.85 | | | reply |
| Gingold | July 97 | 7–18 | .4 | .5 | 0.2 | | | reply |
| Gingold | July 97 | 7–19 | 5.9 | 1 | 5.9 | | | Homan |
| Gingold | July 97 | 7–21 | 6 | 1 | 6 | | | Homan |
| Gingold | July 97 | 7–22 | 1.5 | 1 | 1.5 | | | Homan, stat conf |
| Gingold | July 97 | 7–23 | .8 | 1 | 0.8 | | | Homan |
| Gingold | July 97 | 7–24 | .8 | 1 | 0.8 | | | Homan, stat conf, field |
| Gingold | July 97 | 7–25 | 3.8 | 1 | 3.8 | | | Erwin, field, Homan |
| Gingold | July 97 | 7–28 | 1.2 | 1 | 1.2 | | | Dep. Plan, field, Homan |
| Gingold | July 97 | 7–29 | 2.01 | 1 | 2.01 | | | Homan, stat conf, dep, field |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | July 97 | 7–30 | 1.4 | 1 | 1.4 | | | Homan, field, dep |
| Gingold | July 97 | 7–31 | .7 | 1 | .7 | | | Homan |
| **Total** | **July 97** | | **58.06** | | **58.06** | **78.3** | **20.24** | |
| Gingold | Aug. 97 | 8–1 | 5.55 | 1 | 5.55 | | | Rebutter, field |
| Gingold | Aug. 97 | 8–2 | 2.7 | 1 | 2.7 | | | Rebutter |
| Gingold | Aug. 97 | 8–4 | 1.9 | 1 | 1.9 | | | Rebutter, field |
| Gingold | Aug. 97 | 8–5 | 5 | 1 | 5 | | | rebutter |
| Gingold | Aug. 97 | 8–6 | 5 | 1 | 5 | | | rebutt, stat conf |
| Gingold | Aug. 97 | 8–7 | 2.5 | 1 | 2.5 | | | Stat conf |
| Gingold | Aug. 97 | 8–8 | 5.77 | 1 | 5.77 | | | Stat conf, DOI deps |
| Gingold | Aug. 97 | 8–11 | .8 | 1 | 0.8 | | | Stat conf |
| Gingold | Aug. 97 | 8–12 | 2.6 | 1 | 2.6 | | | Stat conf, PwC |
| Gingold | Aug. 97 | 8–13 | 1.7 | 1 | 1.7 | | | PwC |
| Gingold | Aug. 97 | 8–18 | .7 | 1 | 0.7 | | | Stat conf |
| Gingold | Aug. 97 | 8–19 | .9 | 1 | 0.9 | | | Stat conf |
| Gingold | Aug. 97 | 8–20 | 1.1 | 1 | 1.1 | | | Stat conf |
| Gingold | Aug. 97 | 8–21 | 4.6 | 1 | 4.6 | | | Stat conf, int rel. |
| Gingold | Aug. 97 | 8–22 | .4 | 1 | 0.4 | | | Stat conf |
| Gingold | Aug. 97 | 8–24 | 2.5 | .5 | 1.25 | | | Portland |
| Gingold | Aug. 97 | 8–25 | 9.4 | 1 | 9.4 | | | Portland, stat conf |
| Gingold | Aug. 97 | 8–26 | 8 | 1 | 8 | | | Portland, stat conf |
| Gingold | Aug. 97 | 8–27 | 8.8 | 1 | 8.8 | | | Site visits |
| Gingold | Aug. 97 | 8–28 | 8 | 1 | 8 | | | Travel |
| Gingold | Aug. 97 | 8–29 | 1.1 | 1 | 1.1 | | | Field probs |
| **Total** | **Aug. 97** | | **79.02** | | **77.77** | **84.8** | **7.03** | |
| Gingold | Sept. 97 | 9–2 | 3.2 | 1 | 3.2 | | | Portland, spec mast |
| Gingold | Sept. 97 | 9–3 | 2.4 | .5 | 1.2 | | | Stat sample |
| Gingold | Sept. 97 | 9–4 | .4 | 1 | 0.4 | | | PwC |
| Gingold | Sept. 97 | 9–5 | .4 | 1 | 0.4 | | | PwC |
| Gingold | Sept. 97 | 9–9 | .5 | 1 | 0.5 | | | PwC, stat conf |
| Gingold | Sept. 97 | 9–10 | .4 | 1 | 0.4 | | | Stat conf, PwC |
| Gingold | Sept. 97 | 9–11 | 2.6 | 1 | 2.6 | | | Stat conf, field |
| Gingold | Sept. 97 | 9–16 | 3.7 | 1 | 3.7 | | | Sample, plan mtg |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Sept. 97 | 9–17 | .3 | .5 | 0.15 | | | Field |
| Gingold | Sept. 97 | 9–18 | 3.3 | 1 | 3.3 | | | PwC, sample |
| Gingold | Sept. 97 | 9–22 | 1.4 | 1 | 1.4 | | | PwC |
| Gingold | Sept. 97 | 9–23 | 3 | 1 | 3 | | | sample |
| Gingold | Sept. 97 | 9–25 | .3 | 1 | 0.3 | | | sample |
| Gingold | Sept. 97 | 9–26 | .4 | 1 | 0.4 | | | Sample |
| Gingold | Sept. 97 | 9–29 | .3 | 1 | 0.3 | | | sample |
| Gingold | Sept. 97 | 9–30 | .7 | .5 | 0.35 | | | sample |
| **Total** | **Sept. 97** | | **23.3** | | **21.6** | **30.6** | **9** | |
| Gingold | Oct. 97 | 10–6 | .8 | 1 | 0.8 | | | sample |
| Gingold | Oct. 97 | 10–7 | 1.3 | 1 | 1.3 | | | Sample |
| Gingold | Oct. 97 | 10–8 | 7.7 | .25 | 1.925 | | | sample |
| Gingold | Oct. 97 | 10–9 | 1.6 | 1 | 1.6 | | | sample |
| Gingold | Oct. 97 | 10–10 | 7.5 | 1 | 7.5 | | | sample |
| Gingold | Oct. 97 | 10–11 | 1 | 1 | 1 | | | sample |
| Gingold | Oct. 97 | 10–13 | 1.4 | 1 | 1.4 | | | sample |
| Gingold | Oct. 97 | 10–14 | 2.1 | 1 | 2.1 | | | sample |
| Gingold | Oct. 97 | 10–15 | 2.1 | 1 | 2.1 | | | sample |
| Gingold | Oct. 97 | 10–16 | 4 | 1 | 4 | | | sample |
| Gingold | Oct. 97 | 10–20 | 4.8 | 1 | 4.8 | | | Stat conf, sample |
| Gingold | Oct. 97 | 10–21 | 6.1 | 1 | 6.1 | | | sample |
| Gingold | Oct. 97 | 10–22 | .3 | 1 | 0.3 | | | sample |
| Gingold | Oct. 97 | 10–23 | 2.1 | 1 | 2.1 | | | sample, PwC, stat |
| Gingold | Oct. 97 | 10–24 | 5.3 | 1 | 5.3 | | | Trial date, proof issue |
| Gingold | Oct. 97 | 10–27 | 2.3 | 1 | 2.3 | | | Trial date, sample |
| Gingold | Oct. 97 | 10–28 | 4 | 1 | 4 | | | request |
| Gingold | Oct. 97 | 10–29 | .95 | 1 | 0.95 | | | request, PwC |
| Gingold | Oct. 97 | 10–30 | .3 | 1 | 0.3 | | | request resp. |
| **Total** | **Oct. 97** | | **55.65** | | **49.875** | **63.2** | **13.325** | |
| Gingold | Nov. 97 | 11–1 | 1.8 | 1 | 1.8 | | | PwC |
| Gingold | Nov. 97 | 11–3 | 3.2 | 1 | 3.2 | | | R56, date, PwC |
| Gingold | Nov. 97 | 11–4 | 3.45 | 1 | 3.45 | | | Local rule, stat conf |
| Gingold | Nov. 97 | 11–4 | .9 | .5 | 0.45 | | | procedure for same |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Nov. 97 | 11–5 | .35 | 1 | 0.35 | | | Trial date |
| Gingold | Nov. 97 | 11–6 | 5.4 | 1 | 5.4 | | | sample, stat conf |
| Gingold | Nov. 97 | 11–7 | 5.5 | 1 | 5.5 | | | sample, site info |
| Gingold | Nov. 97 | 11–8 | 7.5 | 1 | 7.5 | | | sample |
| Gingold | Nov. 97 | 11–9 | 7.8 | 1 | 7.8 | | | sample |
| Gingold | Nov. 97 | 11–10 | 9.8 | 1 | 9.8 | | | sample |
| Gingold | Nov. 97 | 11–11 | 8.9 | 1 | 8.9 | | | sample |
| Gingold | Nov. 97 | 11–12 | 5.6 | 1 | 5.6 | | | sample |
| Gingold | Nov. 97 | 11–13 | 6.1 | .1 | 6.1 | | | sample |
| Gingold | Nov. 97 | 11–14 | 1 | 1 | 1 | | | Salt River, sample |
| Gingold | Nov. 97 | 11–17 | .5 | 1 | 0.5 | | | sample |
| Gingold | Nov. 97 | 11–18 | .2 | 1 | 0.2 | | | sample |
| Gingold | Nov. 97 | 11–19 | .5 | 1 | 0.5 | | | sample, strategy |
| Gingold | Nov. 97 | 11–24 | .5 | .5 | 0.25 | | | DOJ sample |
| Gingold | Nov. 97 | 11–25 | 3.2 | 1 | 3.2 | | | Joint sample |
| Gingold | Nov. 97 | 11–26 | .7 | 1 | 0.7 | | | Joint sample |
| Gingold | Nov. 97 | 11–26 | 1.5 | .5 | 0.75 | | | PwC |
| Gingold | Nov. 97 | 11–26 | 3 | .5 | 1.5 | | | PwC |
| **Total** | **Nov. 97** | | **77.4** | | **74.45** | **91.6** | **17.15** | |
| Gingold | Dec. 97 | 12–2 | 1.6 | 1 | 1.6 | | | nonspec vm, class |
| Gingold | Dec. 97 | 12–3 | 2.6 | 1 | 2.6 | | | PwC |
| Gingold | Dec. 97 | 12–4 | 4.6 | 1 | 4.6 | | | sample, DOJ docs |
| Gingold | Dec. 97 | 12–5 | 2.8 | .17 | 0.476 | | | trial date |
| Gingold | Dec. 97 | 12–6 | .2 | 1 | 0.2 | | | options, timelines |
| Gingold | Dec. 97 | 12–7 | .4 | 1 | 0.4 | | | sample |
| Gingold | Dec. 97 | 12–8 | .9 | 1 | 0.9 | | | DOJ mtg, sample, logistics |
| Gingold | Dec. 97 | 12–9 | 2.5 | 1 | 2.5 | | | sample |
| Gingold | Dec. 97 | 12–10 | 1.3 | 1 | 1.3 | | | sample |
| Gingold | Dec. 97 | 12–10 | .7 | .5 | 0.35 | | | AA samp. |
| Gingold | Dec. 97 | 12–12 | 7.9 | 1 | 7.9 | | | sample, trial date |
| Gingold | Dec. 97 | 12–15 | .8 | 1 | 0.8 | | | sample probs |
| Gingold | Dec. 97 | 12–16 | 1.6 | 1 | 1.6 | | | sample |
| Gingold | Dec. 97 | 12–17 | 1.1 | 1 | 1.1 | | | sample |
| Gingold | Dec. 97 | 12–18 | 1 | 1 | 1 | | | sample |
| Gingold | Dec. 97 | 12–19 | .8 | 1 | 0.8 | | | sample |
| Gingold | Dec. 97 | 12–20 | .3 | 1 | 0.3 | | | sample |
| Gingold | Dec. 97 | 12–21 | 3.5 | 1 | 3.5 | | | stat report. dep |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Dec. 97 | 12–23 | 6.5 | 1 | 6.5 | | | stat report, doc request |
| Gingold | Dec. 97 | 12–24 | 5.1 | 1 | 5.1 | | | stat report |
| Total | Dec. 97 | | 46.2 | | 43.526 | 82.2 | 38.674 | |
| Gingold | Jan. 98 | 1–5 | 2.2 | 1 | 2.2 | | | sample |
| Gingold | Jan. 98 | 1–6 | 3 | 1 | 3 | | | sample |
| Gingold | Jan. 98 | 1–7 | 4 | 1 | 4 | | | case stat, PwC |
| Gingold | Jan. 98 | 1–8 | 2.6 | 1 | 2.6 | | | stat report, PwC |
| Gingold | Jan. 98 | 1–9 | 4.3 | 1 | 4.3 | | | stat report, PwC |
| Gingold | Jan. 98 | 1–10 | 3.4 | 1 | 3.4 | | | stat report |
| Gingold | Jan. 98 | 1–11 | .4 | 1 | 0.4 | | | stat report |
| Gingold | Jan. 98 | 1–12 | 4.4 | 1 | 4.4 | | | stat report, PwC |
| Gingold | Jan. 98 | 1–13 | 2.4 | 1 | 2.4 | | | stat report, sched |
| Gingold | Jan. 98 | 1–14 | 2.6 | 1 | 2.6 | | | stat report, Portland |
| Gingold | Jan. 98 | 1–15 | 3.7 | 1 | 3.7 | | | stat report, sched, serv |
| Gingold | Jan. 98 | 1–15 | 2.1 | .5 | 1.05 | | | bifurcate |
| Gingold | Jan. 98 | 1–16 | 7 | 1 | 7 | | | stat report, mtg dates |
| Gingold | Jan. 98 | 1–19 | .4 | 1 | 0.4 | | | mtg plan |
| Gingold | Jan. 98 | 1–20 | 2.2 | 1 | 2.2 | | | mtg plan, Lasater |
| Gingold | Jan. 98 | 1–22 | .7 | 1 | 0.7 | | | DOJ mtg |
| Gingold | Jan. 98 | 1–23 | 1.15 | 1 | 1.15 | | | PwC, DoJ mtg |
| Gingold | Jan. 98 | 1–24 | 1 | 1 | 1 | | | sample, Mot Comp |
| Gingold | Jan. 98 | 1–24 | .3 | .5 | 0.15 | | | AA/PwC conflict |
| Gingold· | Jan. 98 | 1–26 | 8.2 | 1 | 8.2 | | | Mot Comp |
| Gingold | Jan. 98 | 1–27 | 8.6 | 1 | 8.6 | | | Mot Comp, DOJ |
| Gingold | Jan. 98 | 1–28 | 3.3 | 1 | 3.3 | | | Mot Comp, DOJ |
| Gingold | Jan. 98 | 1–29 | 2.4 | 1 | 2.4 | | | mtg prep |
| Gingold | Jan. 98 | 1–30 | 3.5 | .67 | 2.345 | | | spec mast, mtg prep |
| Gingold | Jan. 98 | 1–30 | .1 | 1 | 0.1 | | | status |
| Total | Jan. 98 | | 73.95 | | 71.595 | 83.2 | 11.605 | |
| Gingold | Feb. 98 | 2–2 | 1.1 | 1 | 1.1 | | | DOJ mtg |
| Gingold | Feb. 98 | 2–3 | 3.3 | 1 | 3.3 | | | Lasater, Mot Comp |
| Gingold | Feb. 98 | 2–4 | 4.4 | 1 | 4.4 | | | Mot Comp, int relief |
| Gingold | Feb. 98 | 2–5 | 3.7 | 1 | 3.7 | | | Mot Comp |
| Gingold | Feb. 98 | 2–6 | 4 | 1 | 4 | | | Mot Comp |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | Feb. 98 | 2–7 | 2.5 | 1 | 2.5 | | | Mot Comp, Lasater |
| Gingold | Feb. 98 | 2–8 | 1.1 | 1 | 1.1 | | | Mot Comp |
| Gingold | Feb. 98 | 2–9 | 3.1 | 1 | 3.1 | | | Mot Comp |
| Gingold | Feb. 98 | 2–10 | 2.4 | 1 | 2.4 | | | Mot Comp, Lasater |
| Gingold | Feb. 98 | 2–12 | .5 | 1 | 0.5 | | | Mot Comp |
| Gingold | Feb. 98 | 2–18 | 1.3 | 1 | 1.3 | | | case stat, logistics |
| Gingold | Feb. 98 | 2–19 | .1 | 1 | 0.1 | | | conf call |
| Gingold | Feb. 98 | 2–23 | .5 | 1 | 0.5 | | | Mot Comp |
| Gingold | Feb. 98 | 2–24 | 2.3 | 1 | 2.3 | | | Mot Comp |
| Gingold | Feb. 98 | 2–25 | 1.1 | 1 | 1.1 | | | Mot Comp, DOJ issues |
| Gingold | Feb. 98 | 2–26 | .15 | 1 | 0.15 | | | status conf |
| Total | Feb. 98 | | 31.55 | | 31.55 | 60.1 | 28.55 | |
| Gingold | Mar. 98 | 3–2 | .5 | .33 | 0.165 | | | Erwin dep |
| Gingold | Mar. 98 | 3–4 | 1 | 1 | 1 | | | case status, PwC |
| Gingold | Mar. 98 | 3–5 | .7 | 1 | 0.7 | | | PwC, Stat issues |
| Gingold | Mar. 98 | 3–6 | 1.7 | 1 | 1.7 | | | findings, Erwin |
| Gingold | Mar. 98 | 3–6 | .2 | .5 | 0.1 | | | findings, Erwin |
| Gingold | Mar. 98 | 3–7 | 1.2 | 1 | 1.2 | | | findings |
| Gingold | Mar. 98 | 3–9 | 1.5 | 1 | 1.5 | | | findings, status |
| Gingold | Mar. 98 | 3–10 | .9 | 1 | 0.9 | | | findings |
| Gingold | Mar. 98 | 3–11 | 2.45 | 1 | 2.45 | | | findings, Erwin |
| Gingold | Mar. 98 | 3–12 | 1.8 | 1 | 1.8 | | | findings |
| Gingold | Mar. 98 | 3–13 | 1.8 | 1 | 1.8 | | | findings |
| Gingold | Mar. 98 | 3–14 | 2.2 | 1 | 2.2 | | | findings |
| Gingold | Mar. 98 | 3–15 | 1.4 | 1 | 1.4 | | | findings |
| Gingold | Mar. 98 | 3–16 | 3.5 | 1 | 3.5 | | | findings, logistics |
| Gingold | Mar. 98 | 3–17 | 3.4 | 1 | 3.4 | | | |
| Gingold | Mar. 98 | 3–18 | 2 | 1 | 2 | | | findings, case stat |
| Gingold | Mar. 98 | 3–19 | 1.3 | 1 | 1.3 | | | findings |
| Gingold | Mar. 98 | 3–20 | 1.1 | 1 | 1.1 | | | findings |
| Gingold | Mar. 98 | 3–23 | 2.7 | 1 | 2.7 | | | findings |
| Gingold | Mar. 98 | 3–24 | 1.9 | 1 | 1.9 | | | findings |
| Gingold | Mar. 98 | 3–25 | .7 | 1 | 0.7 | | | find, PwC |
| Gingold | Mar. 98 | 3–25 | 1.1 | .4 | 0.44 | | | strategy |
| Gingold | Mar. 98 | 3–26 | .7 | 1 | 0.7 | | | findings |
| Gingold | Mar. 98 | 3–27 | .4 | 1 | 0.4 | | | motions |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total | Mar. 98 | | 36.15 | | 35.055 | 49 | 13.945 | |
| Gingold | Apr. 98 | 4–1 | 2.1 | 1 | 2.1 | | | PwC, logistics |
| Gingold | Apr. 98 | 4–2 | 4.8 | 1 | 4.8 | | | PwC, stat conf, DOJ |
| Gingold | Apr. 98 | 4–3 | 6.9 | 1 | 6.9 | | | stat conf |
| Gingold | Apr. 98 | 4–6 | .4 | .67 | 0.268 | | | bifurcate, sched |
| Gingold | Apr. 98 | 4–10 | .3 | 1 | 0.3 | | | PwC |
| Gingold | Apr. 98 | 4–14 | .3 | 1 | 0.3 | | | case plan |
| Gingold | Apr. 98 | 4–23 | 1 | 1 | 1 | | | stat conf |
| Gingold | Apr. 98 | 4–24 | .1 | 1 | 0.1 | | | trial date, schedule |
| Gingold | Apr. 98 | 4–27 | 1.1 | 1 | 1.1 | | | DOJ sup br |
| Gingold | Apr. 98 | 4–29 | .18 | 1 | 0.18 | | | propose order, DOJ |
| Total | Apr. 98 | | 17.53 | | 17.398 | 60.9 | 43.502 | |
| Gingold | May 98 | 5–6 | 2.8 | 1 | 2.8 | | | case manage |
| Gingold | May 98 | 5–7 | 6.9 | .5 | 3.45 | | | Preber, Lasater |
| Gingold | May 98 | 5–10 | 3.5 | 1 | 3.5 | | | IIM clean, spec acct |
| Gingold | May 98 | 5–13 | .4 | 1 | 0.4 | | | AA deps |
| Gingold | May 98 | 5–14 | .5 | 1 | 0.5 | | | Preber |
| Gingold | May 98 | 5–15 | 1.4 | 1 | 1.4 | | | Preber |
| Gingold | May 98 | 5–18 | 3.7 | 1 | 3.7 | | | Preber |
| Gingold | May 98 | 5–19 | 6.5 | 1 | 6.5 | | | Preber |
| Gingold | May 98 | 5–20 | 3.1 | 1 | 3.1 | | | status conf, statistics |
| Gingold | May 98 | 5–20 | 1.8 | .67 | 1.206 | | | status conf, sample |
| Gingold | May 98 | 5–21 | 1.3 | 1 | 1.3 | | | Preber, Lasater |
| Gingold | May 98 | 5–26 | 3.21 | 1 | 3.21 | | | Erwin, Lasater |
| Gingold | May 98 | 5–27 | .7 | 1 | 0.7 | | | Erwin, ¶ 18 |
| Gingold | May 98 | 5–28 | 7.5 | 1 | 7.5 | | | Erwin dep |
| Gingold | May 98 | 5–29 | 1.5 | .5 | 0.75 | | | ¶ 18 |
| Total | May 98 | | 44.81 | | 40.016 | 101.8 | 61.784 | |
| Gingold | June 98 | 6–3 | .7 | 1 | 0.7 | | | stat model |
| Gingold | June 98 | 6–4 | .5 | 1 | 0.5 | | | stat issues |
| Gingold | June 98 | 6–5 | 3.2 | 1 | 3.2 | | | Lasater, case status, stat sample |
| Gingold | June 98 | 6–8 | .5 | .67 | 0.335 | | | Mot comp/Mot quash Shields + Cohen dep |
| Gingold | June 98 | 6–9 | 3.6 | 1 | 3.6 | | | Stat issues |
| Gingold | June 98 | 6–10 | 4 | .67 | 2.68 | | | Mot Quash S + C |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | June 98 | 6–12 | 1.8 | 1 | 1.8 | | | PwC, status |
| Gingold | June 98 | 6–12 | 5.4 | .67 | 3.618 | | | Resp. Mot Quash S+C |
| Gingold | June 98 | 6–13 | 7 | .67 | 4.69 | | | Quash S+C |
| Gingold | June 98 | 6–14 | 10 | .67 | 6.7 | | | Quash S+C |
| Gingold | June 98 | 6–15 | 9.6 | .67 | 6.432 | | | Quash S+C |
| Gingold | June 98 | 6–16 | 1.8 | 1 | 1.8 | | | stat conf |
| Gingold | June 98 | 6–16 | 7 | .5 | 3.5 | | | stat conf |
| Gingold | June 98 | 6–17 | 1 | 1 | 1 | | | Treas. Checks, status |
| Gingold | June 98 | 6–17 | .4 | .67 | 0.268 | | | status |
| Gingold | June 98 | 6–18 | 8.3 | .67 | 5.561 | | | surreply S+C |
| Gingold | June 98 | 6–19 | 7.1 | .67 | 4.757 | | | surr S+C |
| Gingold | June 98 | 6–19 | .2 | 1 | 0.2 | | | statistical issues |
| Gingold | June 98 | 6–22 | .47 | .67 | 0.3149 | | | surr S+C |
| Gingold | June 98 | 6–23 | .3 | .22 | 0.066 | | | surr S+C |
| Gingold | June 98 | 6–23 | 2.5 | .67 | 1.675 | | | surr S+C |
| Gingold | June 98 | 6–23 | .2 | 1 | 0.2 | | | PwC |
| Gingold | June 98 | 6–24 | 1.2 | .67 | 0.804 | | | surr S+C |
| Total (Pre 6–5) | June 98 | | 4.4 | | 4.4 | 17.3 | 12.9 | |
| Total (Post 6–5) | June 98 | | 72.37 | | 50.0009 | 109.5 | 59.4991 | |
| Gingold | July 98 | 7–2 | 4.8 | 1 | 4.8 | | | strategy |
| Gingold | July 98 | 7–2 | .3 | .5 | 0.15 | | | strategy |
| Gingold | July 98 | 7–3 | 1 | 1 | 1 | | | strat, case status |
| Gingold | July 98 | 7–6 | 1.2 | 1 | 1.2 | | | AA dec, br |
| Gingold | July 98 | 7–7 | .3 | 1 | 0.3 | | | br. issues |
| Gingold | July 98 | 7–8 | 3.7 | 1 | 3.7 | | | strat, PwC |
| Gingold | July 98 | 7–9 | 1 | .5 | 0.5 | | | analysis |
| Gingold | July 98 | 7–10 | .4 | .5 | 0.2 | | | analysis |
| Gingold. | July 98 | 7–13 | 3.1 | 1 | 3.1 | | | Mot E.T. |
| Gingold | July 98 | 7–20 | .2 | .5 | 0.1 | | | analysis |
| Gingold | July 98 | 7–21 | 1.4 | .5 | 0.7 | | | stat conf, prot order |
| Gingold | July 98 | 7–22 | .7 | .5 | 0.35 | | | analysis |
| Gingold | July 98 | 7–23 | 1 | 1 | 1 | | | Mot Prot. |
| Gingold | July 98 | 7–24 | 1.4 | 1 | 1.4 | | | resp. |
| Gingold | July 98 | 7–25 | 5.5 | 1 | 5.5 | | | resp. |
| Gingold | July 98 | 7–26 | 4.9 | 1 | 4.9 | | | resp. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Gingold | July 98 | 7–27 | 10.3 | 1 | 10.3 | | | resp. |
| Gingold | July 98 | 7–28 | 9 | 1 | 9 | | | resp, case status |
| Gingold | July 98 | 7–29 | 11.5 | 1 | 11.5 | | | resp, case status |
| Gingold | July 98 | 7–30 | 11.6 | 1 | 11.6 | | | resp., case status |
| Gingold | July 98 | 7–31 | 8.5 | 1 | 8.5 | | | resp. |
| Total | July 98 | | 81.8 | | 79.8 | 95 | 15.2 | |
| Gingold | Aug. 98 | 8–2 | 2 | 1 | 2 | | | DOJsupp |
| Gingold | Aug. 98 | 8–3 | 2 | 1 | 2 | | | DOJsupp |
| Gingold | Aug. 98 | 8–4 | 1.4 | 1 | 1.4 | | | DOJsupp |
| Gingold | Aug. 98 | 8–5 | 5.8 | 1 | 5.8 | | | DOJsupp |
| Gingold | Aug. 98 | 8–6 | 5.6 | 1 | 5.6 | | | DOJsupp |
| Gingold | Aug. 98 | 8–7 | 4.5 | 1 | 4.5 | | | DOJsupp |
| Gingold | Aug. 98 | 8–9 | 3.8 | 1 | 3.8 | | | DOJsupp |
| Gingold | Aug. 98 | 8–11 | 4.2 | 1 | 4.2 | | | DOJsupp |
| Gingold | Aug. 98 | 8–12 | 4.5 | 1 | 4.5 | | | DOJsupp |
| Gingold | Aug. 98 | 8–13 | 4.6 | 1 | 4.6 | | | DOJsupp |
| Gingold | Aug. 98 | 8–14 | 3.5 | 1 | 3.5 | | | DOJsupp |
| Gingold | Aug. 98 | 8–15 | 4.5 | 1 | 4.5 | | | DOJsupp |
| Gingold | Aug. 98 | 8–16 | 6 | 1 | 6 | | | DOJsupp |
| Gingold | Aug. 98 | 8–17 | 4.1 | 1 | 4.1 | | | DOJsupp |
| Gingold | Aug. 98 | 8–18 | 4.3 | 1 | 4.3 | | | DOJsupp |
| Gingold | Aug. 98 | 8–19 | 8.5 | 1 | 8.5 | | | DOJsupp |
| Gingold | Aug. 98 | 8–20 | 6.3 | 1 | 6.3 | | | DOJsupp |
| Gingold | Aug. 98 | 8–24 | 1.9 | 1 | 1.9 | | | DOJsupp |
| Gingold | Aug. 98 | 8–25 | 4.5 | 1 | 4.5 | | | sample |
| Gingold | Aug. 98 | 8–26 | .9 | 1 | 0.9 | | | stats |
| Gingold | Aug. 98 | 8–27 | 3.3 | 1 | 3.3 | | | stats, status |
| Gingold | Aug. 98 | 8–31 | 3.1 | 1 | 3.1 | | | PwC |
| Total | Aug. 98 | | 89.3 | | 89.3 | 101.6 | 12.3 | |
| Gingold | Sept. 98 | 9–16 | 2.6 | 1 | 2.6 | | | RFA |
| Total | Sept. 98 | | 2.6 | | 2.6 | 50.8 | 48.2 | |
| Gingold | Oct. 98 | 10–10 | 3 | 1 | 3 | | | RFA |
| Gingold | Oct. 98 | 10–11 | 5 | 1 | 5 | | | RFA |
| Gingold | Oct. 98 | 10–12 | 5.5 | 1 | 5.5 | | | RFA |
| Gingold | Oct. 98 | 10–13 | 5.4 | 1 | 5.4 | | | RFA |
| Gingold | Oct. 98 | 10–14 | 6.3 | 1 | 6.3 | | | RFA |
| Gingold | Oct. 98 | 10–15 | 6.7 | 1 | 6.7 | | | RFA |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Gingold | Oct. 98 | 10–16 | 4.3 | 1 | 4.3 | | | RFA |
| Total | Oct. 98 | | 36.2 | | 36.2 | 89 | 52.8 | |
| Gingold | Nov. 98 | 11–13 | .9 | 1 | 0.9 | | | RFA |
| Total | Nov. 98 | | 0.9 | | 0.9 | 145 | 144.1 | |
| Gingold | Dec. 98 | | | | | | | |
| Total | Dec. 98 | | 0 | | 0 | 108.9 | 108.9 | |
| Gingold | Jan. 99 | | | | | | | |
| Total | Jan. 99 | | 0 | | 0 | 207.5 | 207.5 | |
| Gingold | Feb. 99 | 2–8 | .4 | 1 | 0.4 | | | case manage |
| Total | Feb. 99 | | 0.4 | | 0.4 | 64.1 | 63.7 | |
| Gingold | Mar. 99 | | | | | | | |
| Total | Mar. 99 | | 0 | | 0 | 89.4 | 89.4 | |
| TOTAL | | | 1032.69 | | 935.8949 | 2125.1 | 1189.2051 | |
| Pre–6/5 | | | 749.12 | | 676.694 | 1064.3 | 387.606 | |
| Post–6/5 | | | 283.57 | | 259.2009 | 1060.8 | 801.5991 | |

## HOLT

Holt

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Holt | Dec. 96 | 12–6 | 7 | 1 | 7 | | | Travel |
| Holt | Dec. 96 | 12–16 | .5 | .5 | 0.25 | | | ¶ 2 |
| Total | Dec. 96 | | 7.5 | | 7.25 | 10 | 2.75 | |
| Holt | Apr. 97 | 4–29 | 1.2 | 1 | 1.2 | | | field |
| Total | Apr. 97 | | 1.2 | | 1.2 | 1.2 | 0 | |
| Holt | May 97 | 5–2 | .1 | .5 | 0.05 | | | field |
| Holt | May 97 | 5–13 | .7 | .5 | 0.35 | | | PwC |
| Total | May 97 | | 0.8 | | 0.4 | 1.3 | 0.9 | |
| Holt | June 97 | 6–3 | .3 | .33 | 0.099 | | | PwC |
| Holt | June 97 | 6–16 | .3 | 1 | 0.3 | | | tribe records |
| Holt | June 97 | 6–17 | .6 | .67 | 0.402 | | | PwC, status |
| Holt | June 97 | 6–18 | .9 | .5 | 0.45 | | | PwC |
| Total | June 97 | | 2.1 | | 1.251 | 3.1 | 1.849 | |
| Holt | Sept. 97 | 9–11 | .5 | 1 | 0.5 | | | sample |

| Name | Month | Date | | | | | | Description |
|------|-------|------|---|---|---|---|---|-------------|
| Holt | Sept. 97 | 9–26 | .1 | 1 | 0.1 | | | sample |
| Holt | Sept. 97 | 9–29 | .3 | 1 | 0.3 | | | sample |
| Holt | Sept. 97 | 9–30 | 2 | 1 | 2 | | | sample |
| Total | Sept. 97 | | 2.9 | | 2.9 | 2.9 | 0 | |
| Holt | Oct. 97 | 10–6 | .2 | 1 | 0.2 | | | sample |
| Holt | Oct. 97 | 10–9 | 4.5 | 1 | 4.5 | | | sample |
| Holt | Oct. 97 | 10–10 | .5 | 1 | 0.5 | | | sample |
| Holt | Oct. 97 | 10–13 | .1 | 1 | 0.1 | | | sample |
| Holt | Oct. 97 | 10–14 | 1.8 | 1 | 1.8 | | | sample |
| Holt | Oct. 97 | 10–15 | .2 | 1 | 0.2 | | | sample |
| Holt | Oct. 97 | 10–21 | 1.2 | 1 | 1.2 | | | sample |
| Total | Oct. 97 | | 8.5 | | 8.5 | 8.5 | 0 | |
| Holt | Nov. 97 | 11–7 | .1 | 1 | 0.1 | | | Salt River |
| Total | Nov. 97 | | 0.1 | | 0.1 | .1 | 0 | |
| Holt | Dec. 97 | 12–11 | .4 | .5 | 0.2 | | | AA stall |
| Holt | Dec. 97 | 12–15 | 1.1 | .5 | 0.55 | | | AA |
| Holt | Dec. 97 | 12–23 | 1.2 | .5 | 0.6 | | | stat report |
| Holt | Dec. 97 | 12–23 | 2 | .33 | 0.66 | | | stat report |
| Holt | Dec. 97 | 12–24 | .4 | 1 | 0.4 | | | stat report |
| Total | Dec. 97 | | 5.1 | | 2.41 | 5.1 | 2.69 | |
| Holt | Jan. 98 | 1–24 | .3 | 1 | 0.3 | | | DOJ mtg, Mot Comp |
| Holt | Jan. 98 | 1–26 | 1.2 | 1 | 1.2 | | | Mot Comp |
| Holt | Jan. 98 | 1–28 | 3.4 | 1 | 3.4 | | | Mot Comp |
| Total | Jan. 98 | | 4.9 | | 4.9 | 4.9 | 0 | |
| Holt | Feb. 98 | 2–4 | .7 | 1 | 0.7 | | | sample |
| Holt | Feb. 98 | 2–20 | 1.3 | .33 | 0.429 | | | strategy |
| Total | Feb. 98 | | 2 | | 1.129 | 3.2 | 2.071 | |
| Holt | Apr. 98 | | | | | | | |
| Total | Apr. 98 | | 0 | | 0 | 3 | 3 | |
| Holt | July 98 | 7–15 | 3.6 | 1 | 3.6 | | | Mot Ex. Time |
| Holt | July 98 | 7–24 | 1 | 1 | 1 | | | reply |
| Total | July 98 | | 4.6 | | 4.6 | 5.6 | 1 | |
| Holt | Aug. 98 | 8–7 | 4 | .2 | 0.8 | | | sampling |
| Total | Aug. 98 | | 4 | | 0.8 | 4.0 | 3.2 | |
| Holt | Sept. 98 | 9–2 | 1.1 | 1 | 1.1 | | | Mot. To amend prod orders |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Holt | Sept. 98 | 9–6 | 1.5 | 1 | 1.5 | | | Mot APO |
| Total | Sept. 98 | | 2.6 | . | 2.6 | 8.1 | 5.5 | |
| Holt | Nov. 98 | | | | | | | |
| Total | Nov. 98 | | 0 | | 0 | 18.5 | 18.5 | |
| Holt | Dec. 98 | | | | | | | |
| Total | Dec. 98 | | 0 | | 0 | 6.8 | 6.8 | |
| Holt | Jan. 99 | 1–6 | 6 | 1 | 6 | | | travel |
| Total | Jan. 99 | | 6 | | 6 | 15.8 | 9.8 | |
| Holt | Feb. 99 | | | | | | | |
| Total | Feb. 99 | | 0 | | 0 | 19 | 19 | |
| Holt | Mar. 99 | | | | | | | |
| Total | Mar. 99 | | 0 | | 0 | 4.4 | 4.4 | |
| TOTAL | | | 47.4 | | 44.04 | 125.5 | 81.46 | |
| Pre 6/5 | | | 28.8 | | 19.09 | 33.3 | 10.51 | |
| Post 6/5 | | | 17.2 | | 14 | 82.2 | 68.2 | |

## NATIVE AMERICAN RIGHTS FUND: HARPER

Harper

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Harper | Dec. 96 | 12–9 | .3 | .5 | 0.15 | | | "ethics" |
| Harper | Dec. 96 | 12–16 | .3 | .5 | 0.15 | | | Case sched |
| Harper | Dec. 96 | 12–20 | .2 | 1 | 0.2 | | | MMS |
| Total | Dec. 96 | | 0.7 | | 0.5 | 5.5 | 5 | |
| Harper | Jan. 97 | 1–6 | .5 | 1 | 0.5 | | | case status |
| Harper | Jan. 97 | 1–20 | .4 | .4 | 0.16 | | | media, status conf |
| Total | Jan. 97 | | 0.9 | | 0.66 | 3.35 | 2.69 | |
| Harper | Feb. 97 | 2–11 | 1.25 | 1 | 1.25 | | | stat conf |
| Harper | Feb. 97 | 2–12 | .4 | 1 | 0.4 | | | status rep |
| Harper | Feb. 97 | 2–12 | 1 | 1 | 1 | | | interim rel, sov issues |
| Harper | Feb. 97 | 2–18 | .2 | .5 | 0.1 | | | PwC |
| Total | Feb. 97 | | 2.85 | | 2.75 | 4.45 | 1.7 | |
| Harper | Mar. 97 | 3–4 | .2 | 1 | 0.2 | | | PwC letter |
| Harper | Mar. 97 | 3–5 | .5 | 1 | 0.5 | | | spec mast |
| Harper | Mar. 97 | 3–6 | .3 | 1 | 0.3 | | | spec mast |

| Name | Month | Date | | | | | | Description |
|---|---|---|---|---|---|---|---|---|
| Harper | Mar. 97 | 3–10 | .5 | 1 | 0.5 | | | PwC |
| Harper | Mar. 97 | 3–11 | 1.05 | 1 | 1.05 | | | PwC |
| Harper | Mar. 97 | 3–18 | .4 | 1 | 0.4 | | | stat conf |
| Harper | Mar. 97 | 3–19 | 2.3 | 1 | 2.3 | . | | stat call |
| Harper | Mar. 97 | 3–20 | .65 | 1 | 0.65 | | | conf call, mtg plan . |
| Harper | Mar. 97 | 3–24 | 1.25 | 1 | 1.25 | | | interim rel. |
| Total | Mar. 97 | · | 7.15 | | 7.15 | 8.25 | 1.1 | |
| Harper | Apr. 97 | 4–1 | .5 | 1 | 0.5 | | | PwC, spec master |
| Harper | Apr. 97 | 4–2 | .3 | 1 | 0.3 | | | PwC mtg |
| Harper | Apr. 97 | 4–4 | 1.2 | 1 | 1.2 | | | spec mast |
| Harper | Apr. 97 | 4–14 | 1.5 | 1 | 1.5 | | | BIA mtg |
| Harper | Apr. 97 | 4–15 | 7.3 | 1 | 7.3 | | | BIA mtg, Phoenix |
| Harper | Apr. 97 | 4–17 | 1.6 | 1 | 1.6 | | | stat conf |
| Harper | Apr. 97 | 4–23 | .5 | 1 | 0.5 | | | spec mast |
| Harper | Apr. 97 | 4–25 | 1.6 | .25 | 0.4 | | | PwC mtg |
| Harper | Apr. 97 | 4–30 | .4 | 1 | 0.4 | | | Phoenix |
| Total | Apr. 97 | | 14.9 | | 13.7 | 18.05 | 4.35 | |
| Harper | May 97 | 5–2 | .4 | 1 | 0.4 | | | Phoenix |
| Harper | May 97 | 5–12 | .45 | 1 | 0.45 | | | sample |
| Harper | May 97 | 5–13 | 2.5 | 1 | 2.5 | | | PwC, Phnx |
| Harper | May 97 | 5–14 | .4 | 1 | 0.4 | | | field staff |
| Harper | May 97 | 5–18 | 8 | 1 | 8 | | | travel |
| Harper | May 97 | 5–20 | 6 | 1 | 6 | | | field docs |
| Harper | May 97 | 5–21 | 10.1 | 1 | 10.1 | | | field |
| Harper | May 97 | 5–22 | .5 | 1 | 0.5 | | | field report |
| Harper | May 97 | 5–23 | 2 | 1 | 2 | | | field |
| Harper | May 97 | 5–25 | 7 | 1 | 7 | | | travel |
| Harper | May 97 | 5–27 | .5 | .5 | 0.25 | | | Phoenix |
| Harper | May 97 | 5–30 | 1 | .5 | 0.5 | | | PwC doc access |
| Total | May 97 | | 38.85 | | 38.1 | 43.15 | 5.05 | |
| Harper | June 97 | 6–2 | 2.8 | 1 | 2.8 | | | sample |
| Harper | June 97 | 6–12 | .4 | .5 | 0.2 | | | Salt River, |
| Harper | June 97 | 6–24 | 3 | .67 | 2.01 | | | stat conf, sample |
| Harper | June 97 | 6–24 | .25 | 1 | 0.25 | | | status conf |
| Total | June 97 | | 6.45 | | 5.26 | 12.25 | 6.99 | |
| Harper | July 97 | 7–28 | .3 | 1 | 0.3 | | | field visit |
| Harper | July 97 | 7–29 | 1.5 | .5 | 0.75 | | | PwC |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Harper | July 97 | 7–29 | .4 | 1 | 0.4 | | | Portland |
| Harper | July 97 | 7–30 | 1.4 | 1 | 1.4 | | | field |
| Total | July 97 | | 3.6 | | 2.85 | 3.6 | 0.75 | |
| Harper | Aug. 97 | 8–5 | 1.7 | 1 | 1.7 | | | Portland |
| Harper | Aug. 97 | 8–6 | 4.3 | 1 | 4.3 | | | travel |
| Harper | Aug. 97 | 8–7 | 11.4 | 1 | 11.4 | | | sample, travel, stat conf |
| Harper | Aug. 97 | 8–12 | 1.6 | .67 | 1.072 | | | Portland, sample, scope |
| Harper | Aug. 97 | 8–21 | 6.5 | 1 | 6.5 | | | Travel |
| Harper | Aug. 97 | 8–25 | 3 | .67 | 2.01 | | | travel, Portland |
| Harper | Aug. 97 | 8–25 | .45 | 1 | 0.45 | | | Portland, strategy |
| Harper | Aug. 97 | 8–26 | 10.5 | 1 | 10.5 | | | site mtgs, travel |
| Harper | Aug. 97 | 8–27 | .75 | 1 | 0.75 | | | travel, site mtg, site report |
| Harper | Aug. 97 | 8–27 | 7 | .8 | 5.6 | | | travel, site mtgs, reports |
| Harper | Aug. 97 | 8–28 | 1 | 1 | 1 | | | PwC lunch |
| Harper | Aug. 97 | 8–28 | 6.5 | .5 | 3.25 | | | travel |
| Harper | Aug. 97 | 8–29 | 1.3 | 1 | 1.3 | | | site summary |
| Harper | Aug. 97 | 8–30 | 7 | 1 | 7 | | | travel |
| Total | Aug. 97 | | 66.6 | | 59.682 | 66.4 | 6.718 | |
| Harper | Sept. 97 | 9–3 | 3.5 | 1 | 3.5 | | | sample, PwC, travel |
| Harper | Sept. 97 | 9–9 | .5 | .5 | 0.25 | | | stat conf |
| Harper | Sept. 97 | 9–10 | .75 | .33 | 0.2475 | | | stat conf |
| Harper | Sept. 97 | 9–11 | 3.7 | 1 | 3.7 | | | stat conf, sample, $ issues |
| Harper | Sept. 97 | 9–15 | 1.55 | 1 | 1.55 | | | status conf |
| Harper | Sept. 97 | 9–16 | 3.35 | 1 | 3.35 | | | sample |
| Harper | Sept. 97 | 9–18 | .8 | .33 | 0.264 | | | sample |
| Harper | Sept. 97 | 9–18 | 1 | .5 | 0.5 | | | sample |
| Harper | Sept. 97 | 9–18 | 5.8 | 1 | 5.8 | | | sample, travel |
| Harper | Sept. 97 | 9–24 | .45 | 1 | 0.45 | | | strategy |
| Total | Sept. 97 | | 21.4 | | 19.6115 | 29.05 | 9.4385 | |
| Harper | Oct. 97 | 10–1 | 1.2 | 1 | 1.2 | | | sample |
| Harper | Oct. 97 | 10–8 | 7 | .5 | 3.5 | | | sample |

| Harper | Oct. 97 | 10–8 | .6 | 1 | 0.6 | | | sample |
|---|---|---|---|---|---|---|---|---|
| Harper | Oct. 97 | 10–9 | 1.75 | 1 | 1.75 | | | no descrip., status conf |
| Harper | Oct. 97 | 10–10 | 2.35 | 1 | 2.35 | | | sample |
| Harper | Oct. 97 | 10–12 | .2 | .5 | 0.1 | | | sample |
| Harper | Oct. 97 | 10–13 | . 1.3 | 1 | 1.3 | | | sample |
| Harper | Oct. 97 | 10–15 | .2 | 1 | 0.2 | | | sample |
| Harper | Oct. 97 | 10–16 | .25 | .5 | 0.125 | | | status conf |
| Harper | Oct. 97 | 10–16 | .4 | 1 | 0.4 | | | status conf |
| Harper | Oct. 97 | 10–17 | 1.5 | 1 | 1.5 | | | sample, stat conf |
| Harper | Oct. 97 | 10–20 | 4.45 | 1 | 4.45 | | | stat conf, sample |
| Harper | Oct. 97 | 10–21 | . 4.4 | 1 | 4.4 | | | joint sample |
| Harper | Oct. 97 | 10–22 | .3 | .5 | 0.15 | | | joint sample |
| Harper | Oct. 97 | 10–27 | 1.5 | 1 | 1.5 | | | trial date, PwC |
| Harper | Oct. 97 | 10–28 | 2.6 | 1 | 2.6 | | | trial date |
| Harper | Oct. 97 | 10–29 | .2 | 1 | 0.2 | | | PwC |
| Harper | Oct. 97 | 10–31 | 1.2 | 1 | 1.2 | | | PwC plan |
| **Total** | **Oct. 97** | | **31.4** | | 27.525 | 45.45 | 17.925 | |
| Harper | Nov. 97 | 11–5 | .25 | .5 | 0.125 | | | sample |
| Harper | Nov. 97 | 11–5 | .6 | 1 | 0.6 | | | joint sample |
| Harper | Nov. 97 | 11–6 | .85 | 1 | 0.85 | | | trial date, joint sample |
| Harper | Nov. 97 | 11–7 | 10.75 | 1 | 10.75 | | | trial date reply, grant |
| Harper | Nov. 97 | 11–8 | 2.2 | 1 | 2.2 | | | reply |
| Harper | Nov. 97 | 11–9 | 7 | .5 | 3.5 | | | reply |
| Harper | Nov. 97 | 11–10 | 1.6 | 1 | 1.6 | | | reply |
| Harper | Nov. 97 | 11–10 | 7.5 | .86 | 6.45 | | | reply |
| Harper | Nov. 97 | 11–11 | 6 | .83 | 4.98 | | | reply |
| Harper | Nov. 97 | 11–12 | 6 | 1 | 6 | | | reply |
| Harper | Nov. 97 | 11–13 | 6 | 1 | 6 | | | reply |
| Harper | Nov. 97 | 11–17 | .65 | 1 | 0.65 | | | case prog |
| Harper | Nov. 97 | 11–20 | 2 | 1 | 2 | | | PwC lunch |
| Harper | Nov. 97 | 11–21 | 1.1 | 1 | 1.1 | | | joint sample |
| Harper | Nov. 97 | 11–24 | 1.45 | 1 | 1.45 | | | redraw sample |
| Harper | Nov. 97 | 11–25 | .6 | 1 | 0.6 | | | case update |
| Harper | Nov. 97 | 11–25 | .2 | .5 | 0.1 | | | sample |
| **Total** | **Nov. 97** | | **54.75** | | 48.955 | 69.8 | 20.845 | |
| Harper | Dec. 97 | 12–2 | .45 | .5 | 0.225 | | | PwC |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Harper | Dec. 97 | 12–4 | 2.5 | .5 | 1.25 | | | mtg prep re: sample |
| Harper | Dec. 97 | 12–5 | 3.1 | .5 | 1.55 | | | sample, trial date |
| Harper | Dec. 97 | 12–5 | 1.5 | .5 | 0.75 | | | debrief |
| Harper | Dec. 97 | 12–10 | .15 | 1 | 0.15 | | | sample |
| Harper | Dec. 97 | 12–11 | 4 | 1 | 4 | | | sample redraw |
| Harper | Dec. 97 | 12–15 | 1.4 | 1 | 1.4 | | | sample |
| Harper | Dec. 97 | 12–16 | 5.2 | 1 | 5.2 | | | sample |
| Harper | Dec. 97 | 12–17 | 1.2 | 1 | 1.2 | | | sample, case org |
| Harper | Dec. 97 | 12–19 | 6.3 | 1 | 6.3 | | | newspaper, sample |
| Harper | Dec. 97 | 12–22 | 2.2 | 1 | 2.2 | | | status rep. |
| Harper | Dec. 97 | 12–23 | 1.3 | .33 | 0.429 | | | status rep. |
| Harper | Dec. 97 | 12–23 | 1.4 | .33 | 0.462 | | | status rep. |
| Harper | Dec. 97 | 12–23 | 1.3 | .33 | 0.429 | | | status rep. |
| **Total** | **Dec. 97** | | **32** | | **25.545** | **63.05** | **37.505** | |
| Harper | Jan. 98 | 1–5 | .8 | .33 | 0.264 | | | update |
| Harper | Jan. 98 | 1–5 | 2.2 | 1 | 2.2 | | | updates, stat approach, DOJ |
| Harper | Jan. 98 | 1–7 | .6 | 1 | 0.6 | | | sample |
| Harper | Jan. 98 | 1–8 | 1.2 | 1 | 1.2 | | | stat report |
| Harper | Jan. 98 | 1–9 | 2.9 | 1 | 2.9 | | | stat report |
| Harper | Jan. 98 | 1–12 | 2.3 | 1 | 2.3 | | | stat report |
| Harper | Jan. 98 | 1–13 | 1.2 | 1 | 1.2 | | | stat report |
| Harper | Jan. 98 | 1–14 | 1.2 | 1 | 1.2 | | | stat report |
| Harper | Jan. 98 | 1–21 | .3 | 1 | 0.3 | | | DOJ mtg |
| Harper | Jan. 98 | 1–22 | .5 | 1 | 0.5 | | | Mot Comp |
| Harper | Jan. 98 | 1–23 | 1.1 | 1 | 1.1 | | | AA sample |
| Harper | Jan. 98 | 1–26 | 3 | 1 | 3 | | | Mot Comp |
| Harper | Jan. 98 | 1–27 | .4 | 1 | 0.4 | | | Mot Comp |
| Harper | Jan. 98 | 1–28 | .9 | 1 | 0.9 | | | Mot Comp |
| **Total** | **Jan. 98** | | **18.6** | | **18.064** | **39.9** | **21.836** | |
| Harper | Feb. 98 | 2–2 | 5.4 | 1 | 5.4 | | | DOJ mtg |
| Harper | Feb. 98 | 2–3 | 4.5 | 1 | 4.5 | | | Mot Comp |
| Harper | Feb. 98 | 2–5 | .85 | 1 | 0.85 | | | Mot Comp, "other trust fund cases" |
| Harper | Feb. 98 | 2–9 | 7.7 | 1 | 7.7 | | | Salt River, travel, MC |
| Harper | Feb. 98 | 2–10 | 5.1 | 1 | 5.1 | | | Salt R, MC |
| Harper | Feb. 98 | 2–20 | 3.65 | 1 | 3.65 | | | case strat |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Harper | Feb. 98 | 2–23 | 1.5 | .67 | 1.005 | | | trial date, limit act |
| Harper | Feb. 98 | 2–24 | 3 | 1 | 3 | | | Mot Comp |
| Harper | Feb. 98 | 2–25 | 2.5 | .75 | 1.875 | | | strategy, funding |
| **Total** | **Feb. 98** | | **34.2** | | **33.08** | **37** | **3.92** | |
| Harper | Mar. 98 | 3–5 | 2.3 | 1 | 2.3 | | | OST budget |
| Harper | Mar. 98 | 3–6 | 4.7 | 1 | 4.7 | | | OST bud |
| Harper | Mar. 98 | 3–9 | .7 | .5 | 0.35 | | | Erwin dep |
| Harper | Mar. 98 | 3–12 | .6 | 1 | 0.6 | | | strategy |
| Harper | Mar. 98 | 3–18 | 1.3 | .5 | 0.65 | | | sample |
| Harper | Mar. 98 | 3–19 | 3 | 1 | 3 | | | Erwin |
| Harper | Mar. 98 | 3–24 | 1.7 | 1 | 1.7 | | | strategy |
| Harper | Mar. 98 | 3–25 | 2.5 | .25 | 0.625 | | | case analysis |
| Harper | Mar. 98 | 3–27 | .8 | .5 | 0.4 | | | budget, PwC |
| Harper | Mar. 98 | 3–30 | 2.5 | 1 | 2.5 | | | Mot Comp |
| **Total** | **Mar. 98** | | **20.1** | | **16.825** | **53.55** | **36.725** | |
| Harper | Apr. 98 | 4–9 | 1.2 | 1 | 1.2 | | | pop est. |
| Harper | Apr. 98 | 4–13 | .91 | 1 | 0.91 | | | case timeline |
| Harper | Apr. 98 | 4–17 | 1.8 | 1 | 1.8 | | | BIA/OTFM probs, tribe |
| **Total** | **Apr. 98** | | **3.91** | | **3.91** | **33.4** | **29.49** | |
| Harper | May 98 | 5–8 | 1.6 | 1 | 1.6 | | | contract, Salt R |
| Harper | May 98 | 5–12 | 1 | 1 | 1 | | | Erwin |
| Harper | May 98 | 5–14 | 1.2 | 1 | 1.2 | | | strategy |
| Harper | May 98 | 5–18 | 7 | 1 | 7 | | | Erwin |
| Harper | May 98 | 5–19 | 8 | 1 | 8 | | | Erwin |
| Harper | May 98 | 5–20 | .45 | 1 | 0.45 | | | AA deps |
| Harper | May 98 | 5–24 | 7.5 | 1 | 7.5 | | | Erwin, AA |
| Harper | May 98 | 5–25 | 7.5 | 1 | 7.5 | | | Erwin |
| Harper | May 98 | 5–26 | 10.6 | 1 | 10.6 | | | Erwin |
| Harper | May 98 | 5–27 | 7.8 | 1 | 7.8 | | | Erwin |
| **Total** | **May 98** | | **52.65** | | **52.65** | **79.15** | **26.5** | |
| Harper | June 98 | 6–1 | 2 | 1 | 2 | | | Erwin |
| Harper | June 98 | 6–1 | 2 | .5 | 1 | | | research atty dep. |
| Harper | June 98 | 6–5 | 1.5 | .67 | 1.005 | | | Mot Quash S + C |
| Harper | June 98 | 6–5 | 2.5 | .5 | 1.25 | | | rsch atty dep |
| Harper | June 98 | 6–8 | .5 | .67 | 0.335 | | | Prot Order |
| Harper | June 98 | 6–8 | 1.5 | .5 | 0.75 | | | rsch dep atty |
| Harper | June 98 | 6–10 | 2.5 | .5 | 1.25 | | | atty dep |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Harper | June 98 | 6–11 | 6 | .5 | 3 | | | atty dep rsch, brief |
| Harper | June 98 | 6–11 | 3 | .5 | 1.5 | | | write atty dep brief |
| Harper | June 98 | 6–12 | 6 | .5 | 3 | | | atty dep rsch |
| Harper | June 98 | 6–13 | 7.55 | .67 | 5.0585 | | | Prot Order S+C, atty de p |
| Harper | June 98 | 6–14 | 6.5 | .67 | 4.355 | | | resp. brief |
| Harper | June 98 | 6–15 | 9 | .67 | 6.03 | | | resp. brief |
| Harper | June 98 | 6–17 | .45 | 1 | 0.45 | | | case update |
| Harper | June 98 | 6–22 | 3.4 | .67 | 2.278 | | | reply, surreply |
| Harper | June 98 | 6–23 | 1.8 | .67 | 1.206 | | | surreply |
| **Total** | **June 98** | | **56.2** | | **34.4675** | **89.4** | **54.9325** | |
| Harper | July 98 | 7–1 | 3 | 1 | 3 | | | Mot Dismiss |
| Harper | July 98 | 7–28 | 1.2 | 1 | 1.2 | | | prot order |
| Harper | July 98 | 7–30 | 1.1 | 1 | 1.1 | | | prot order |
| **Total** | **July 98** | | **5.3** | | **5.3** | **6.55** | **1.25** | |
| Harper | Aug. 98 | 8–18 | 2 | 1 | 2 | | | status conf |
| Harper | Aug. 98 | 8–24 | .2 | 1 | 0.2 | | | PwC |
| Harper | Aug. 98 | 8–25 | 2.5 | .33 | 0.825 | | | money manage |
| **Total** | **Aug. 98** | | **4.7** | | **3.025** | **12.9** | **9.875** | |
| Harper | Sept. 98 | 9–2 | 4.9 | 1 | 4.9 | | | sample alternative |
| Harper | Sept. 98 | 9–14 | 1.7 | 1 | 1.7 | | | status conf |
| Harper | Sept. 98 | 9–15 | 2.2 | 1 | 2.2 | | | atty mtg |
| **Total** | **Sept. 98** | | **8.8** | | **8.8** | **21.3** | **12.5** | |
| Harper | Oct. 98 | 10–1 | 1.1 | 1 | 1.1 | | | PwC |
| Harper | Oct. 98 | 10–9 | 4 | 1 | 4 | | | witness interviews |
| Harper | Oct. 98 | 10–12 | 7 | 1 | 7 | | | travel OK |
| Harper | Oct. 98 | 10–20 | 1.5 | 1 | 1.5 | | | sched, assignment |
| Harper | Oct. 98 | 10–21 | .7 | 1 | 0.7 | | | assign memo |
| Harper | Oct. 98 | 10–27 | 2 | .67 | 1.34 | | | special trust |
| **Total** | **Oct. 98** | **16.3** | | | **15.64** | **36.1** | **20.46** | |
| Harper | Nov. 98 | 11–4 | 6 | 1 | 6 | | | case assign, staff |
| Harper | Nov. 98 | 11–6 | 3.3 | 1 | 3.3 | | | stat conf, debrief |
| Harper | Nov. 98 | 11–10 | 1.1 | 1 | 1.1 | | | staffing |
| Harper | Nov. 98 | 11–18 | 3.35 | 1 | 3.35 | | | PwC |
| Harper | Nov. 98 | 11–22 | 2 | 1 | 2 | | | status conf |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Harper | Nov. 98 | 11–23 | 3.8 | 1 | 3.8 | | | status conf |
| Harper | Nov. 98 | 11–24 | .35 | 1 | 0.35 | | | case manage |
| Total | Nov. 98 | | 19.9 | | 19.9 | 64.05 | 44.15 | |
| Harper | Dec. 98 | 12–3 | 2.35 | 1 | 2.35 | | | class status |
| Harper | Dec. 98 | 12–7 | 2.5 | 1 | 2.5 | | | class status |
| Harper | Dec. 98 | 12–15 | 2 | 1 | 2 | | | status conf, case update |
| Total | Dec. 98 | | 6.85 | | 6.85 | 72.35 | 65.5 | |
| Harper | Jan. 99 | 1–26 | 2 | 1 | 2 | | | IIM stories from Indian Country |
| Total | Jan. 99 | | 2 | | 2 | 83.25 | 81.25 | |
| Harper | Feb. 99 | | | | | | | |
| Total | Feb. 99 | | 0 | | 0 | | | |
| Harper | Mar. 99 | | | | | | | |
| Total | Mar. 99 | | 0 | | 0 | | | |
| | | | | | | | | |
| TOTAL | | | 531.06 | | 472.8 | 1001.25 | 528.45 | |

## NATIVE AMERICAN RIGHTS FUND: PEREGOY

Peregoy

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Peregoy | Jan. 97 | 1–9 | 1 | .8 | 0.8 | | | Class cert, ethics |
| Peregoy | Jan. 97 | 1–14 | .1 | .5 | 0.05 | | | class letter |
| Peregoy | Jan. 97 | 1–14 | .5 | .5 | 0.25 | | | PwC |
| Peregoy | Jan. 97 | 1–18 | .7 | 1 | 0.7 | | | mtg plan, case status, strate gy |
| Peregoy | Jan. 97 | 1–20 | .8 | 1 | 0.8 | | | case status, strat- egy |
| Peregoy | Jan. 97 | 1–21 | 1 | 1 | 1 | | | status conf |
| Peregoy | Jan. 97 | 1–22 | .7 | 1 | 0.7 | | | serv list, status call |
| Total | Jan. 97 | | 4.8 | | 4.3 | 6.4 | 2.1 | |
| Peregoy | Feb. 97 | 2–10 | .1 | 1 | 0.1 | | | status conf |
| Peregoy | Feb. 97 | 2–11 | 1.45 | 1 | 1.45 | | | status conf |
| Total | Feb. 97 | | 1.55 | | 1.55 | 3.75 | 2.2 | |
| Peregoy | Mar. 97 | 3–19 | .4 | 1 | 0.4 | | | status conf |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Peregoy | Mar. 97 | 3–20 | .4 | 1 | 0.4 | | | conf call, status conf |
| Total | Mar. 97 | | 0.8 | | 0.8 | 4.4 | 3.6 | |
| Peregoy | Apr. 97 | 4–15 | 1.3 | 1 | 1.3 | | | case status |
| Total | Apr. 97 | | 1.3 | | 1.3 | 1.5 | 0.2 | |
| Peregoy | May 97 | 5–7 | .3 | 1 | 0.3 | | | Phoenix |
| Peregoy | May 97 | 5–8 | .7 | 1 | 0.7 | | | Phoenix |
| Peregoy | May 97 | 5–13 | .4 | .5 | 0.2 | | | Phoenix |
| Peregoy | May 97 | 5–13 | 2 | 1 | 2 | | | Phoenix |
| Peregoy | May 97 | 5–14 | .2 | 1 | 0.2 | | | Phoenix |
| Peregoy | May 97 | 5–15 | .2 | 1 | 0.2 | | | Phoenix |
| Peregoy | May 97 | 5–16 | 1 | 1 | 1 | | | status conf |
| Peregoy | May 97 | 5–20 | 12 | 1 | 12 | | | travel, mtg |
| Peregoy | May 97 | 5–21 | 10.5 | 1 | 10.5 | | | field work |
| Peregoy | May 97 | 5–22 | 10.5 | 1 | 10.5 | | | field, travel |
| Peregoy | May 97 | 5–23 | .5 | 1 | 0.5 | | | trip report |
| Peregoy | May 97 | 5–24 | 4 | 1 | 4 | | | travel |
| Peregoy | May 97 | 5–27 | 5.5 | 1 | 5.5 | | | travel |
| Total | May 97 | | 47.8 | | 47.6 | 49.1 | 1.5 | |
| Peregoy | June 97 | 6–2 | .6 | .5 | 0.3 | | | tribe accts |
| Peregoy | June 97 | 6–9 | 2 | 1 | 2 | | | Homan |
| Peregoy | June 97 | 6–12 | 1 | 1 | 1 | | | status conf |
| Peregoy | June 97 | 6–13 | 2 | .5 | 1 | | | status conf |
| Peregoy | June 97 | 6–16 | 2.3 | .5 | 1.15 | | | stat conf, Homan |
| Peregoy | June 97 | 6–19 | 2.1 | 1 | 2.1 | | | tribe accts, stat conf, Homan |
| Peregoy | June 97 | 6–24 | 3.1 | 1 | 3.1 | | | Homan, status conf |
| Total | June 97 | | 13.1 | | 10.65 | 14.1 | 3.45 | |
| Peregoy | July 97 | 7–25 | 2 | .5 | 1 | | | Portland |
| Total | July 97 | | 2 | | 1 | 2 | 1 | |
| Peregoy | Aug. 97 | 8–8 | .3 | 1 | 0.3 | | | status conf |
| Peregoy | Aug. 97 | 8–11 | .3 | 1 | 0.3 | | | status conf |
| Peregoy | Aug. 97 | 8–12 | 2.5 | 1 | 2.5 | | | status conf |
| Peregoy | Aug. 97 | 8–13 | 1.1 | 1 | 1.1 | | | sample, Portland |
| Total | Aug. 97 | | 4.2 | | 4.2 | 4.2 | 0 | |
| Peregoy | Sept. 97 | 9–3 | 1.5 | 1 | 1.5 | | | sample |
| Total | Sept. 97 | | 1.5 | | 1.5 | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Peregoy | Oct. 97 | 10–7 | .3 | 1 | 0.3 | | | status |
| Peregoy | Oct. 97 | 10–21 | .7 | 1 | 0.7 | | | case status |
| Peregoy | Oct. 97 | 10–27 | .1 | 1 | 0.1 | | | case status |
| Total | Oct. 97 | | 1.1 | | 1.1 | 1.6 | 0.5 | |
| Peregoy | Nov. 97 | | | | | | | |
| Total | Nov. 97 | | 0 | | 0 | 0 | 0 | |
| Peregoy | Dec. 97 | 12–12 | .5 | 1 · | 0.5 | | | sample |
| Total | Dec. 97 | | 0.5 | | 0.5 | 4.2 | 3.7 | |
| Peregoy | Jan. 98 | 1–21 | .3 | .33 | 0.099 | | | DOJ mtg |
| Peregoy | Jan. 98 | 1–23 | .4 | 1 | 0.4 | | | Mot Comp |
| Peregoy | Jan. 98 | 1–27 | 3.5 | .85 | 2.975 | | | Mot Comp |
| Total | Jan. 98 | | 4.2 | | 3.474 | 6 | 2.526 | |
| Peregoy | Feb. 98 | 2–2 | 4 | 1 | 4 | | | DOJ mtg, sample |
| Peregoy | Feb. 98 | 2–3 | .2 | .5 | 0.1 | | | DOJ mtg |
| Peregoy | Feb. 98 | 2–3 | .7 | 1 | 0.7 | | | Mot Comp |
| Peregoy | Feb. 98 | 2–6 | .2 | 1 | 0.2 | | | Mot Comp |
| Peregoy | Feb. 98 | 2–10 | .9 | 1 | 0.9 | | | Mot Comp |
| Peregoy | Feb. 98 | 2–24 | 1.4 | 1 | 1.4 | | | Mot Comp, Prot Order |
| Peregoy | Feb. 98 | 2–25 | .2 | 1 | 0.2 | | | case status, sampling |
| Total | Feb. 98 | | 7.6 | | 7.5 | 9.2 | 1.7 | |
| Peregoy | Mar. 98 | 3–13 | .3 | 1 | 0.3 | | | atty fee research |
| Peregoy | Mar. 98 | 3–24 | 1.7 | 1 | 1.7 | | | trial bifurcation |
| Peregoy | Mar. 98 | 3–25 | .5 | 1 | 0.5 | | | Prot order |
| Peregoy | Mar. 98 | 3–26 | .1 | 1 | 0.1 | | | OST budget |
| Peregoy | Mar. 98 | 3–27 | 6.4 | 1 | 6.4 | | | Prot order, budget, PwC |
| Peregoy | Mar. 98 | 3–27 | · .7 | .5 | 0.35 | | | Prot order |
| Peregoy | Mar. 98 | 3–28 | 3.1 | .5 | 1.55 | | | Prot order |
| Peregoy | Mar. 98 | 3–30 | 6.6 | 1 | 6.6 | | | Prot order |
| Peregoy | Mar. 98 | 3–31 | .8 | 1 | 0.8 | | | Prot order |
| Total | Mar. 98 | | 20.2 | | 18.3 | 20.4 | 2.1 | |
| Peregoy | Apr. 98 | 4–1 | 2 | .75 | 1.5 | | | sample, strategy, unlisted accts |
| Peregoy | Apr. 98 | 4–10 | 2.9 | 1 | 2.9 | | | pre–trial sched |
| Peregoy | Apr. 98 | 4–16 | 2.2 | 1 | 2.2 | | | pre–trial sched |
| Peregoy | Apr. 98 | 4–28 | 1.3 | .5 | 0.65 | | | case manage |
| Total | Apr. 98 | | 8.4 | | 7.25 | 15.6 | 8.35 | |

| Peregoy | May 98 | 5–7 | 3.0 | 1 | 3 | | | trust/fiduc re-search |
|---|---|---|---|---|---|---|---|---|
| Peregoy | May 98 | 5–8 | 3.1 | 1 | 3.1 | | | trust resp. re-search |
| Peregoy | May 98 | 5–18 | 1.1 | .5 | 0.55 | | | status conf |
| Peregoy | May 98 | 5–21 | .4 | 1 | 0.4 | | | Lasater |
| Peregoy | May 98 | 5–26 | .1 | .5 | 0.05 | | | Erwin |
| Peregoy | May 98 | 5–26 | .1 | 1 | 0.1 | | | status conf |
| Peregoy | May 98 | 5–26 | .3 | .5 | 0.15 | | | status conf |
| Peregoy | May 98 | 5–29 | .1 | 1 | 0.1 | | | Erwin |
| **Total** | **May 98** | | **8.2** | | **7.45** | **26.6** | **19.15** | |
| Peregoy | June 98 | 6–1 | .5 | .5 | 0.25 | | | Att–Client/Work Prod research |
| Peregoy | June 98 | 6–4 | .2 | 1 | 0.2 | | | Erwin |
| Peregoy | June 98 | 6–6 | 3 | .5 | 1.5 | | | PwC |
| Peregoy | June 98 | 6–8 | .2 | .67 | 0.134 | | | Prot order |
| Peregoy | June 98 | 6–8 | .4 | .22 | 0.088 | | | Mot Comp S + C |
| Peregoy | June 98 | 6–12 | 1 | .5 | 0.5 | | | case status |
| Peregoy | June 98 | 6–14 | 4.75 | .33 | 1.5675 | | | dep. Attys |
| Peregoy | June 98 | 6–15 | 1.5 | .67 | 1.005 | | | Mot Quash S + C |
| Peregoy | June 98 | 6–16 | .5 | 1 | 0.5 | | | status conf |
| Peregoy | June 98 | 6–17 | .75 | .2 | 0.15 | | | IIM manual, tribes |
| Peregoy | June 98 | 6–17 | .5 | .33 | 0.165 | | | Mot quash S + C |
| Peregoy | June 98 | 6–19 | .2 | 1 | 0.2 | | | status conf |
| Peregoy | June 98 | 6–19 | 1.6 | .67 | 1.072 | | | surreply |
| Peregoy | June 98 | 6–22 | .70 | .67 | 0.469 | | | case status, reply |
| Peregoy | June 98 | 6–23 | .2 | .67 | 0.134 | | | case status |
| Peregoy | June 98 | 6–23 | .4 | .67 | 0.268 | | | Mot Quash S + C brief |
| Peregoy | June 98 | 6–23 | 1.3 | .67 | 0.871 | | | brief, reply |
| Peregoy | June 98 | 6–24 | .2 | .2 | 0.04 | | | contract |
| Peregoy | June 98 | 6–24 | .2 | .25 | 0.05 | | | Prot order |
| Peregoy | June 98 | 6–24 | 1.2 | .5 | 0.6 | | | case status |
| Peregoy | June 98 | 6–26 | .7 | .34 | 0.238 | | | Mot Comp S + C |
| Peregoy | June 98 | 6–26 | .77 | .33 | 0.2541 | | | NEB tribal IIMS |
| **Total** | **June 98** | | **20.77** | | **10.2556** | **88.1** | **77.8444** | |
| Peregoy | July 98 | 7–13 | .2 | 1 | 0.2 | | | filegate |
| Peregoy | July 98 | 7–16 | .7 | .5 | 0.35 | | | PwC |
| **Total** | **July 98** | | **0.9** | | **0.55** | **6.4** | **5.85** | |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Peregoy | Aug. 98 | 8–18 | 1 | 1 | 1 | | | status conf |
| Total | Aug. 98 | | 1 | | 1 | 30 | 29 | |
| Peregoy | Sept. 98 | 9–18 | .5 | 1 | 0.5 | | | pre–trial staffing |
| Total | Sept. 98 | | 0.5 | | 0.5 | 14.4 | 13.9 | |
| Peregoy | Oct. 98 | 10–5 | .5 | 1 | 0.5 | | | SRS tribe, case status |
| Peregoy | Oct. 98 | 10–6 | .5 | 1 | 0.5 | | | case status |
| Total | Oct. 98 | | 1 | | 1 | 1.2 | 0.2 | |
| Peregoy | Nov. 98 | 11–9 | 1.4 | 1 | 1.4 | | | case strategy |
| Peregoy | Nov. 98 | 11–10 | 1.5 | 1 | 1.5 | | | strategy |
| Peregoy | Nov. 98 | 11–17 | 1.5 | 1 | 1.5 | | | PwC |
| Peregoy | Nov. 98 | 11–23 | 5.5 | 1 | 5.5 | | | status conf |
| Peregoy | Nov. 98 | 11–24 | 1.1 | .33 | 0.363 | | | settlement |
| Total | Nov. 98 | | 11 | | 10.263 | 66.5 | 56.237 | |
| Peregoy | Dec. 98 | 12–1 | 1.7 | 1 | 1.7 | | | Mot. En. Time |
| Peregoy | Dec. 98 | 12–2 | 2.3 | .5 | 1.15 | | | show cause, Mot En. Time |
| Peregoy | Dec. 98 | 12–3 | 2 | 1 | 2 | | | class |
| Peregoy | Dec. 98 | 12–7 | 2 | 1 | 2 | | | class |
| Peregoy | Dec. 98 | 12–9 | .2 | 1 | 0.2 | | | case status |
| Peregoy | Dec. 98 | 12–22 | 1 | .5 | 0.5 | | | case status |
| Total | Dec. 98 | | 9.2 | | 7.55 | 84.3 | 76.75 | |
| Peregoy | Jan. 99 | 1–6 | 1.5 | 1 | | | | Prot order |
| Peregoy | Jan. 99 | 1–13 | 4.1 | 1 | 4.1 | | | Prot order |
| Peregoy | Jan. 99 | 1–20 | 1 | 1 | 1 | | | OST Budget |
| Peregoy | Jan. 99 | 1–21 | .5 | 1 | 0.5 | | | OST Budget |
| Total | Jan. 99 | | 7.1 | | 5.6 | 157 | 151.4 | |
| TOTAL | | | 178.72 | | 155.1926 | 612.75 | 463.2574 | |

## NATIVE AMERICAN RIGHTS FUND: BABBY

Babby

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Babby | Jan. 98 | 1–26 | 3 | 1 | 3 | | | Mot Comp |
| Babby | Jan. 98 | 1–27 | 6.5 | 1 | 6.5 | | | Mot Comp |
| Babby | Jan. 98 | 1–30 | .6 | 1 | 0.6 | | | Agenda |
| **Total** | **Jan. 98** | | **10.1** | | **10.1** | **10.10** | **0** | |
| Babby | Feb. 98 | 2–2 | 6 | 1 | 6 | | | sample |
| Babby | Feb. 98 | 2–3 | 3 | 1 | 3 | | | review filings |
| Babby | Feb. 98 | 2–4 | .7 | 1 | 0.7 | | | Mot Comp |
| Babby | Feb. 98 | 2–10 | 3 | 1 | 3 | | | Mot Comp |
| Babby | Feb. 98 | 2–24 | 1 | 1 | 1 | | | Mot Comp |
| **Total** | **Feb. 98** | | **13.7** | | **13.7** | **14.4** | **0.7** | |
| Babby | Mar. 98 | 3–6 | .4 | 1 | 0.4 | | | sample |
| Babby | Mar. 98 | 3–24 | 1.7 | 1 | 1.7 | | | strategy |
| Babby | Mar. 98 | 3–25 | 2.9 | .5 | 1.45 | | | strategy |
| Babby | Mar. 98 | 3–27 | 4.2 | .5 | 2.1 | | | Mot Prot Order |
| Babby | Mar. 98 | 3–28 | 3 | 1 | 3 | | | Prot. Order |
| Babby | Mar. 98 | 3–30 | 6 | 1 | 6 | | | Prot Order |
| Babby | Mar. 98 | 3–31 | 2 | 1 | 2 | | | Prot Order |
| **Total** | **Mar. 98** | | **20.2** | | **16.65** | **20.4** | **3.75** | |
| Babby | Apr. 98 | 4–16 | 2 | .5 | 1 | | | sched ord |
| Babby | Apr. 98 | 4–22 | 1.7 | 1 | 1.7 | | | case manage |
| Babby | Apr. 98 | 4–23 | .75 | 1 | 0.75 | | | case manage |
| Babby | Apr. 98 | 4–27 | .5 | 1 | 0.5 | | | case manage |
| **Total** | **Apr. 98** | | **4.95** | | **3.95** | **8.55** | **4.6** | |
| Babby | May 98 | 5–6 | 1.2 | 1 | 1.2 | | | Prot Order |
| Babby | May 98 | 5–7 | .7 | 1 | 0.7 | | | Lasater, Prot Order |
| Babby | May 98 | 5–8 | .8 | 1 | 0.8 | | | Prot Order |
| Babby | May 98 | 5–13 | .3 | .5 | 0.15 | | | Tribe trust funds |
| Babby | May 98 | 5–14 | .4 | .5 | 0.2 | | | Erwin |
| Babby | May 98 | 5–15 | 1 | .5 | 0.5 | | | Erwin |
| Babby | May 98 | 5–15 · | 1.3 | 1 | 1.3 | | | Erwin, PwC |
| Babby | May 98 | 5–18 | 1.10 | .67 | 0.737 | | | Preber, Mot Comp |
| Babby | May 98 | 5–19 | 1 | 1 | 1 | | | Preber, Erwin |
| Babby | May 98 | 5–20 | .6 | 1 | 0.6 | | | status conf |
| Babby | May 98 | 5–22 | 2.5 | 1 | 2.5 | | | Lasater, Preber dep |
| Babby | May 98 | 5–26 | 5 | 1 | 5 | | | Erwin |
| Babby | May 98 | 5–27 | 4.7 | 1 | 4.7 | | | Erwin, magazine |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Babby | May 98 | 5–28 | 1.4 | 1 | 1.4 | | | Erwin |
| Total | May 98 | | 22 | · | 20.787 | 61.3 | 40.513 | |
| Babby | June 98 | 6–2 | 2.3 | .17 | 0.391 | | | Mot Comp S + C |
| Babby | June 98 | 6–5 | .8 | .67 | 0.536 | | | Prot Order |
| Babby | June 98 | 6–5 | .3 | .33 | 0.099 | | | Prot Order |
| Babby | June 98 | 6–5 | .3 | .67 | 0.201 | | | Prot Order |
| Babby | June 98 | 6–9 | 2.5 | 1 | 2.5 | | | sample |
| Babby | June 98 | 6–11 | 1.1 | 1 | 1.1 | | | Homan |
| Babby | June 98 | 6–11 | 1.1 | .67 | 0.737 | | | Prot Order |
| Babby | June 98 | 6–12 | 4.2 | .67 | 2.814 | | | prot order |
| Babby | June 98 | 6–13 | 6 | .67 | 4.02 | | | Prot Order |
| Babby | June 98 | 6–14 | 8 | .67 | 5.36 | | | prot order |
| Babby | June 98 | 6–15 | 8.5 | .67 | 5.695 | | | prot order |
| Babby | June 98 | 6–17 | 1 | .67 | 0.67 | | | surreply, Mot Comp |
| Babby | June 98 | 6–19 | 3.2 | .67 | 2.144 | | | surreply |
| Babby | June 98 | 6–22 | 1.2 | .67 | 0.804 | | | prot order |
| Babby | June 98 | 6–23 | 5.5 | .67 | 3.685 | | | supp brief |
| Total | June 98 | | 46 | | 30.756 | 77.30 | 46.544 | |
| Babby | July 98 | 7–13 | .3 | 1 | 0.3 | | | Mot En. Time |
| Babby | July 98 | 7–15 | 6.8 | 1 | 6.8 | | | Mot En. Time |
| Babby | July 98 | 7–16 | .3 | .33 | 0.099 | | | PwC mtg |
| Babby | July 98 | 7–23 | 2.5 | 1 | 2.5 | | | Prot order |
| Babby | July 98 | 7–24 | 6.5 | 1 | 6.5 | | | Prot order |
| Babby | July 98 | 7–25 | 1 | 1 | 1 | | | Prot order |
| Babby | July 98 | 7–26 | 9 | 1 | 9 | | | Prot order |
| Babby | July 98 | 7–27 | 4.3 | 1 | 4.3 | | | Prot order, stat conf |
| Babby | July 98 | 7–30 | 2.8 | 1 | 2.8 | | | Prot order |
| Babby | July 98 | 7–31 | 1.4 | .25 | 0.35 | | | status rep. |
| Babby | July 98 | 7–31 | .4 | 1 | 0.4 | | | Prot order |
| Total | July 98 | | 35.3 | | 34.049 | 43.4 | 9.351 | |
| Babby | Aug. 98 | | | | | | | |
| Total | Aug. 98 | | 0 | | 0 | 2.2 | 2.2 | |
| Babby | Sept. 98 | 9–3 | .2 | .5 | 0.1 | | | scheduling |
| Total | Sept. 98 | | 0.2 | | 0.1 | 4.4 | 4.3 | |
| Babby | Oct. 98 | 10–7 | 1.7 | 1 | 1.7 | | | |
| Total | Oct. 98 | | 1.7 | | 1.7 | 16.6 | 14.9 | |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Babby | Nov. 98 | 11–17 | 1.5 | 1 | 1.5 | | | alternative sampling |
| Babby | Nov. 98 | 11–19 | 1.7 | 1 | 1.7 | | | settlement |
| Babby | Nov. 98 | 11–30 | .9 | .5 | 0.45 | | | staffing |
| Total | Nov. 98 | | 4.1 | | 3.65 | 44.1 | 40.45 | |
| Babby | Dec. 98 | 12–2 | .6 | 1 | 0.6 | | | class scope |
| Babby | Dec. 98 | 12–24 | .3 | 1 | 0.3 | | | newspaper |
| Babby | Dec. 98 | 12–31 | 1.9 | 1 | 1.9 | | | organize case file |
| Total | Dec. 98 | | 2.8 | | 2.8 | 76.7 | 73.9 | |
| Babby | Jan. 99 | 1–4 | .5 | .67 | 0.335 | | | Mot En. Time, Prot Order |
| Total | Jan. 99 | | 0.5 | | 0.335 | 95.4 | 95.065 | |
| | | | | | | | | |
| TOTAL | | | 161.55 | | 138.577 | 474.85 | 336.273 | |

## NATIVE AMERICAN RIGHTS FUND: ECHOHAWK

Echohawk

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Echohawk | March 97 | 3–24 | 1.3 | 1 | 1.3 | | | sample |
| Total | March 97 | | 1.3 | | 1.3 | 1.3 | 0 | |
| Echohawk | June 97 | 6–2 | .5 | .5 | 0.25 | | | tribal contracts |
| Total | June 97 | | 0.5 | | 0.25 | 0.5 | 0.25 | |
| Echohawk | Nov. 97 | 11–24 | 1 | 1 | 1 | | | settlement |
| Echohawk | Nov. 97 | 11–27 | 1 | 1 | 1 | | | settlement |
| Total | Nov. 97 | | 2 | | 2 | 2 | 0 | |
| Echohawk | Dec. 97 | 12–1 | .3 | .5 | 0.15 | | | case status |
| Echohawk | Dec. 97 | 12–4 | 5.3 | 1 | 5.3 | | | travel, sample |
| Echohawk | Dec. 97 | 12–5 | 5.3 | 1 | 5.3 | | | travel |
| Echohawk | Dec. 97 | 12–5 | 5.7 | .5 | 2.85 | | | sample |
| Echohawk | Dec. 97 | 12–17 | .3 | 1 | 0.3 | | | sample |
| Total | Dec. 97 | | 16.9 | | 13.9 | 18.30 | 4.4 | |
| Echohawk | Jan. 98 | 1–5 | 1 | 1 | 1 | | | stat model |

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Echohawk | Jan. 98 | 1–6 | .5 | 1 | 0.5 | | | sample |
| Echohawk | Jan. 98 | 1–7 | .5 | 1 | 0.5 | | | sample, Mot comp |
| Echohawk | Jan. 98 | 1–13 | 1 | 1 | 1 | | | status report conf |
| Echohawk | Jan. 98 | 1–16 | .3 | 1 | 0.3 | | | mtg date |
| Echohawk | Jan. 98 | 1–20 | .3 | 1 | 0.3 | | | mtg time |
| Echohawk | Jan. 98 | 1–21 | .7 | .5 | 0.35 | | | DOJ mtgs |
| Echohawk | Jan. 98 | 1–23 | .8 | .5 | 0.4 | | | Mot comp |
| Echohawk | Jan. 98 | 1–28 | .3 | 1 | 0.3 | | | Mot comp |
| Echohawk | Jan. 98 | 1–30 | 1.6 | 1 | 1.6 | | | budget, tribe statement, agenda |
| Total | Jan. 98 | | 7 | | 6.25 | 7.0 | 0.75 | |
| Echohawk | Feb. 98 | 2–2 | 3.5 | 1 | 3.5 | | | DOJ mtgs, sample, financing |
| Echohawk | Feb. 98 | 2–20 | 3.5 | 1 | 3.5 | | | strategy, extinct accts |
| Total | Feb. 98 | | 7 | | 7 | 7 | 0 | |
| Echohawk | Nov. 98 | 11–17 | 2 | 1 | 2 | | | PwC status |
| Echohawk | Nov. 98 | 11–19 | 1.4 | 1 | 1.4 | | | settlement |
| Echohawk | Nov. 98 | 11–20 | 1.5 | 1 | 1.5 | | | settlement |
| Echohawk | Nov. 98 | 11–23 | .3 | 1 | 0.3 | | | settlement |
| Echohawk | Nov. 98 | 11–24 | 1 | .33 | 0.33 | | | settlement |
| Total | Nov. 98 | | 6.2 | | 5.53 | 6.2 | 0.67 | |
| Echohawk | Dec. 98 | 12–3 | .2 | 1 | 0.2 | | | Prot. Order |
| Echohawk | Dec. 98 | 12–18 | .5 | 1 | 0.5 | | | Prot Order |
| Total | Dec. 98 | | 0.7 | | 0.7 | .7 | 0 | |
| TOTAL | | | 41.6 | | 36.93 | 43 | 6.07 | |

## NATIVE AMERICAN RIGHTS FUND: KAWAHARA

Kawahara

| Attorney | Month | Date of Disputed Entry | Challenged Hours | Proportional Reduction | Reduced Hours | Monthly Hours Claimed | Monthly Hours Awarded | Notes |
|---|---|---|---|---|---|---|---|---|
| Kawahara | Dec. 96 | | | | | | | |

| Name | Month | Days | | | | | | Description |
|------|-------|------|---|---|---|---|---|-------------|
| Total | Dec. 96 | | 0 | | 0 | 4.6 | 4.6 | |
| Kawahara | Jan. 97 | 1–6 | .7 | 1 | 0.7 | | | case status |
| Kawahara | Jan. 97 | 1–6 | .8 | .5 | 0.4 | | | case status |
| Total | Jan. 97 | | 1.5 | | 1.1 | 4 | 2.9 | |
| Kawahara | Feb. 97 | 2–7 | 1 | .33 | 0.33 | | | case status |
| Kawahara | Feb. 97 | 2–11 | 2 | .33 | 0.66 | | | stat conf, gov't expert |
| Total | Feb. 97 | | 3 | | 0.99 | 4.5 | 3.51 | |
| Kawahara | Mar. 97 | | | | | | | |
| Total | Mar. 97 | | 0 | | 0 | 1.15 | 1.15 | |
| Kawahara | Apr. 97 | 4–15 | 2 | 1 | 2 | | | sample |
| Kawahara | Apr. 97 | 4–15 | 4.5 | 1 | 4.5 | | | sample, int. relief |
| Total | Apr. 97 | | 6.5 | | 6.5 | 7.1 | 0.6 | |
| Kawahara | May 97 | 5–2 | .5 | 1 | 0.5 | | | field |
| Kawahara | May 97 | 5–7 | .2 | 1 | 0.2 | | | Phoenix |
| Kawahara | May 97 | 5–13 | 2 | 1 | 2 | | | PwC, Phoenix |
| Kawahara | May 97 | 5–16 | .4 | .5 | 0.2 | | | status conf |
| Kawahara | May 97 | 5–19 | 8 | 1 | 8 | | | Travel |
| Kawahara | May 97 | 5–20 | 7.5 | 1 | 7.5 | | | mtg re: field |
| Kawahara | May 97 | 5–21 | 7 | 1 | 7 | | | site issues |
| Kawahara | May 97 | 5–22 | .3 | 1 | 0.3 | | | Salt River |
| Kawahara | May 97 | 5–29 | 8 | 1 | 8 | | | travel |
| Total | May 97 | | 33.9 | | 33.7 | 35 | 1.3 | |
| Total | Dec. 97 | | 44.9 | | 42.29 | 56.35 | 14.06 | |

## ***ORDER***

For the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that plaintiffs' claim for attorneys' fees and expenses under this court's February 22, 1999 contempt decision is GRANTED according to the following schedule:

A. Attorneys' Fees

| Attorney | Rate ($/hr) | Hours | Award |
|----------|-------------|-------|-------|
| Dennis Gingold: | | | |
| pre–6/5/98 | $373.75 | 387.61 | $144,869.24 |
| post 6/5/98 | $230.00 | 801.60 | $184,368.00 |

Total award: $329,237.24

Thaddeus Holt:

| | | | |
|---|---|---|---|
| pre 6/5/98 | $345.00 | 10.51 | $ 3,625.95 |
| post 6/5/98 | $230.00 | 68.20 | $ 15,686.00 |
| Total award: | | | $ 19,311.95 |

NARF Attorneys:

| | | | |
|---|---|---|---|
| Keith Harper | $170.00 | 528.45 | $ 89,836.50 |
| Robert Peregoy | $170.00 | 463.26 | $ 78,754.20 |
| Lorna Babby | $170.00 | 336.27 | $ 57,165.90 |
| James Kawahara | $170.00 | 14.06 | $ 2,390.20 |
| John Echohawk | $170.00 | 6.07 | $ 1,031.90 |
| Total award: | | | $229,178.70 |

B. Expenses

| Attorney | Total | | Holt | (15% included) |
|---|---|---|---|---|
| Gingold | (15% included) | | ARF | $22,968.11 |
| | | | PwC | $23,947.50 |

C. Total Award

| Attorney | Fees | Expenses | Total Award |
|---|---|---|---|
| Dennis Gingold: | $329,237.24 | (included) | $329,237.24 |
| Thaddeus Holt: | $ 19,311.95 | (included) | $ 19,311.95 |
| NARF | $229,178.70 | $ 22,968.11 | $252,146.81 |
| PwC | | $ 23,947.50 | $ 23,947.50 |
| **TOTAL AWARD:** | | | $624,643.50 |

Defendants shall pay these amounts to plaintiffs.

So ORDERED.